Skene *v.* Carayanis.

---

DOROTHY W. SKENE *vs.* NICHOLAS G. CARAYANIS ET ALS.

Third Judicial District, Bridgeport, October Term, 1925.

WHEELER, C. J., CURTIS, KEELER, MALTBIE and HAINES, Js.

An owner of real estate who has entered into a contract of sale upon the purchaser's false and fraudulent representation that he is not buying the property on behalf of one who has been negotiating for its purchase through a broker may, on discovery of the truth,

repudiate the contract and refuse conveyance, either to the apparent purchaser or to an assignee of the contract who is a party to the fraud.

The mere listing of property for sale with a real-estate broker is in the nature of an offer which ripens into a contract when the broker has accepted it by producing a customer who is ready, willing and able to purchase upon the owner's terms.

To promote and maintain the integrity of business dealings, the law imposes liability, not only upon him who knowingly and unjustifiably induces another to breach his contract, but also upon him who, under the guise of free competition, prevents another by unlawful means, such as fraud, misrepresentation, intimidation, molestation or obstruction, from pursuing his lawful occupation and from securing to himself the earnings of his industry.

In the present case, the plaintiff offered evidence from which the jury might reasonably have found that after the C brothers had listed their property with her for sale, and after she had obtained an acceptable offer of $90,000 above the existing incumbrances from the defendant O, the defendant H approached O and, having informed him that he could get the property for $85,000 above the incumbrances, secured from him sufficient cash to bind the bargain upon these terms; that H then informed the C brothers that he could sell the property for this price and would do so without commission, to which proposition they assented in good faith upon his false assurance that he was not acting for O; that H then introduced M to the C brothers as the purchaser, with whom they entered into a contract of sale which, on the following day, M assigned to O; and that, later, the C brothers conveyed the property to O. The jury returned a verdict for the plaintiff against O, H, and M, which the trial court refused to set aside. *Held:*

1. That the trial court did not err, since the jury might reasonably have concluded that the plaintiff had been deprived by the fraud of these defendants of an opportunity to pursue to an end her negotiations with O and thus to earn a commission on the sale of the property.

2. That it was not necessary for the plaintiff to prove a fraudulent conspiracy between these defendants, it being sufficient to support a recovery against all of them if it appeared that the representations made by H and M were fraudulent and that O participated as a joint tort-feasor in their wrongful conduct; and that the trial court's charge in this respect was, if anything, too favorable to the defendants and afforded them no ground for complaint.

Argued November 3d, 1925—decided January 8th, 1926.

ACTION to recover damages alleged to have been caused the plaintiff by a conspiracy on the part of the defendants to defraud her of a real-estate commission, brought to the Superior Court in Fairfield County and tried to the jury before *Jennings, J.;* verdict and judgment for the plaintiff to recover $2,294 from the defendants William J. O'Brien, Hyman Wolfson and Max Wolfson, from which they appealed. *No error.*

*Robert R. Rosan,* with whom, on the brief, was *Charles E. Moore,* for the appellants (defendants William J. O'Brien, Hyman Wolfson and Max Wolfson).

*Joseph L. Melvin,* with whom, on the brief, was *Frank P. Barrett,* for the appellee (plaintiff).

MALTBIE, J. The defendants' appeal is based upon the denial of their motion to set the verdict aside and also upon errors they alleged to have been committed on the trial. The determination of the plaintiff's right to recover as a matter of law upon the facts which she may rightfully claim to be supported by substantial evidence in the case, in reliance upon which the jury might reasonably have reached its conclusion, will go far to decide all the issues raised by the appeal. These facts may be summarized as follows: The plaintiff is a real-estate broker. The owners of a certain building, whom we shall call the Carayanis brothers, listed it with her for sale, for a time giving her the exclusive agency, and later continuing it in her hands for sale under a general agency. During the period of her exclusive agency, the plaintiff interested the defendant William J. O'Brien in the purchase of the property, and, not being able to negotiate the sale before that agency expired, she continued her efforts thereafter. Finally she secured from him an offer to pay $90,000 in cash above existing incumbrances. This offer she

promptly submitted to the Carayanis brothers, and they signified they would accept it. The plaintiff, as soon thereafter as she could, got in touch with O'Brien and arranged an appointment with him to meet her in order to sign a contract of purchase. This appointment he did not keep, and when the plaintiff saw him soon after, he indicated to her that he was no longer interested in the purchase of the property. At this conversation the plaintiff told him she believed it could be bought for $85,000 above the amount of the existing mortgages. The plaintiff was not able to fix the precise dates of her interviews with O'Brien after the making of his offer of $90,000, but, at about the time of her meetings with him, the defendant Hyman Wolfson approached O'Brien and advised him that he could purchase the building for $85,000 above existing incumbrances, and O'Brien gave him $1,000 to be used by him to bind the bargain, if he found he could get it for the price named. Wolfson then made to the Carayanis brothers an offer to buy the building at that price. They told him of the offer received from O'Brien through the plaintiff, and were assured that the purchaser whom Wolfson was representing was not O'Brien. Wolfson also told them that if the sale was made, they would incur no liability for a commission. The Carayanis brothers accepted the offer of purchase, and Hyman Wolfson brought the defendant Max Wolfson to them, and told them that he was the purchaser. They then executed a contract to sell the building to Max Wolfson at the price agreed upon, believing him to be the real purchaser, and he paid them $1,000, money furnished him by O'Brien. Max Wolfson never intended to purchase the property for himself, and the next day he assigned his rights under the contract to O'Brien. Later, the Carayanis brothers carried out their obligations under the contract by

conveying the property to O'Brien. The Carayanis brothers acted throughout in good faith and reduced their price to $85,000 above incumbrances, in their contract with Max Wolfson, because thereby they were able to avoid payment of any brokerage commission.

O'Brien's reasons for abandoning the negotiations which were being carried on by the plaintiff and entering upon those instigated by Hyman Wolfson, and the latter's reason for interesting himself in the matter, are evident; the latter was to be compensated by O'Brien for his services in the matter, but even with that compensation added, the property really cost O'Brien considerably less than the $90,000 above incumbrances, which he had offered through the plaintiff. One cannot doubt, too, that the Wolfsons were aware throughout of the situation with reference to the negotiations between the plaintiff and O'Brien. As already noted, the plaintiff is unable to fix the exact day of the appointment she made with O'Brien for the execution of a contract, but there is evidence from which it could reasonably be concluded that the plan to have Wolfson offer $85,000 was made about the same day; if this conclusion is brought into relationship with the fact that O'Brien indicated to the plaintiff at their next meeting that he was no longer interested in the premises, there is ample basis for an inference that O'Brien abandoned his negotiations through the plaintiff in reliance upon the plan he had made with Wolfson to get the building at a less cost. The fact that O'Brien took the assignment of the contract made between Carayanis brothers and Max Wolfson the day after it was executed, certainly strongly indicates that he was also a party to, or adopted as his own, the false representations as to the real purchaser by which the sale was brought about. The facts clearly point to the conclusion that those representations were

made under such circumstances as to constitute a fraud upon the Carayanis brothers which would have justified their repudiation of the contract and refusal to convey the premises to Max Wolfson, or to O'Brien, a party to the fraud. *Morrow* v. *Ursini*, 96 Conn. 219, 113 Atl. 388; *Brett* v. *Cooney*, 75 Conn. 338, 53 Atl. 729, 1124. On the other hand, the plaintiff does not, and hardly in reason could, claim that O'Brien's offer of $90,000 above incumbrances, and the indication on the part of the Carayanis brothers that they would accept it, amounted to anything more than a tentative approach to an agreement for the sale of the property, upon terms later to be specifically fixed; and hence the plaintiff could not be held to have carried her negotiations so far that she had then actually earned her commission.

The general listing of property with a real-estate broker for sale, without special agreement, does not give rise to such mutual obligations as in themselves constitute a contract. 1 Mechem, Agency, § 31. Such a listing of property approximates rather an offer by the owner, which he may withdraw at any time, but which ripens into a contract when the broker meets its terms by producing one who is able, ready, and willing to buy on the terms stated, or on terms satisfactory to the owner. *Harris* v. *McPherson*, 97 Conn. 164, 169, 115 Atl. 723; *Scofield* v. *Second Universalist Soc.*, 102 Conn. 156, 161, 128 Atl. 290. There was, then, no complete contractual relationship existing between the plaintiff and the Carayanis brothers at the time the Wolfsons came upon the scene, so that it cannot accurately be said that their acts brought about a breach of any contract. The instant case does not fall fully within the principle which holds liable him who knowingly and without adequate justification causes another to breach his contract. *R an W Hat Shop, Inc.* v.

*Sculley,* 98 Conn. 1, 119 Atl. 55.   The law does not, however, restrict its protection to rights resting upon completed contracts, but it also forbids unjustifiable interference with any man's right to pursue his lawful business or occupation and to secure to himself the earnings of his industry.   Full, fair and free competition is necessary to the economic life of a community, but under its guise, no man can by unlawful means prevent another from obtaining the fruits of his labor. "The weapons used by the trader who relies upon this right for justification must be those furnished by the laws of trade, or at least must not be inconsistent with their free operation.   No man can justify an interference with another's business through fraud or misrepresentation, nor by intimidation, obstruction or molestation." *Martell* v. *White,* 185 Mass. 255, 261, 59 N. E. 1085; *Auburn Draying Co.* v. *Wardell,* 227 N. Y. 1, 11, 124 N. E. 97; *Virtue* v. *Creamery Package Mfg. Co.,* 123 Minn. 17, 31, 142 N. W. 930.   In *Krigbaum* v. *Sbarbaro,* 23 Cal. App. 427, 434, 138 Pac. 364, the court affirmed the right of a real-estate broker to recover damages from persons who by threats, intimidation and coercion, had prevented the consummation of his negotiations for the sale of certain property.   In *Lewis* v. *Bloede,* 120 C. C. A. 335, 202 Fed. 7, the defendants were held liable in damages to one, the rejection of whose bid for the furnishing of certain supplies was brought about by them through the use of means held by the court to be outside the domain of fair competition for trade.   In *Virtue* v. *Creamery Package Mfg. Co.,* 123 Minn. 17, 31, 142 N. W. 930, the court held that the defendants were liable in damages to the plaintiffs where the former had caused the latter a loss of trade by making misrepresentations concerning the article they were engaged in selling.   In *Godin* v. *Niebuhr,* 236 Mass. 350, 128 N. E. 406, the court up-

held the right of a barber to recover damages against one who circulated libelous statements in regard to the manner in which he was conducting his business. In our own case of *Wyeman* v. *Deady*, 79 Conn. 414, 65 Atl. 129, and in *Huskie* v. *Griffin*, 75 N. H. 345, 74 Atl. 595, *Perkins* v. *Pendleton*, 90 Me. 166, 38 Atl. 96, and *Willner* v. *Silverman*, 109 Md. 341, 71 Atl. 862, the same principle was applied to give damages to workmen deprived of employment by misrepresentation or coercion, although no breach of contract was involved. In the instant case, the plaintiff was deprived by the defendants of the opportunity to pursue to the end the negotiations she was carrying on with O'Brien, and the means by which this was accomplished was the fraud practiced by the Wolfsons upon the Carayanis brothers. Upon reason and authority, the facts the plaintiff might properly claim to have proved established a good cause of action against the defendants, and the trial court did not err in denying the motion to set the verdict aside.

The foregoing discussion substantially disposes of the other reasons of appeal, all of which are based upon the charge as given, or the refusal of the court to charge as requested. The charge as given concisely and adequately laid the issues before the jury. The trial court stated the two vital elements in the plaintiff's case to be these: Would the plaintiff have earned a commission had it not been for the acts of the defendants? Was she prevented from earning it by a fraudulent conspiracy on their part? Of the court's instructions as to the first issue, no complaint is made. As to the second, the court read to the jury certain requests to charge which clearly presented the matter in accordance with the principles we have stated. There was, perhaps, an over-emphasis upon the need of the plaintiff to establish a conspiracy between the

defendants; the misrepresentations having been made by the Wolfsons, participation in their wrongful conduct by O'Brien would of necessity have to be shown, as in the case of any tort alleged to have been committed by more than one person; but if such participation were established, nothing further in the way of a conspiracy need have appeared. *Wyeman* v. *Deady*, 79 Conn. 414, 417, 65 Atl. 129. The charge in this respect was not harmful to the appellants, for at worst, it merely made the plaintiff's burden of proof more onerous. The other criticisms of the charge do not merit discussion. Certain of the requests to charge, the failure to give which is assigned as error, were in conflict with the law of the case as we have stated it. As for the others, the trial court clearly and emphatically charged the jury that the plaintiff was not seeking to recover a commission for the sale of the property, but damages resulting from the fraudulent conduct of the defendants, and, as already stated, definitely told them that she could recover only as she proved the two vital elements above outlined; and if the court had included the requests to charge, the real issues in the case would have been clouded.

There is no error.

In this opinion the other judges concurred.