LAZLO V. KEVICZKY, Respondent, *v.* ISADORE LORBER et al., Appellants, et al., Defendants.

Argued December 2, 1942; decided April 15, 1943.

*Alexander Pfeiffer* for Isadore Lorber, appellant.

*John C. Crawley, Henry W. Proffit, William I. Hart* and *Clifford L. Tichenor* for Dry Dock Savings Institution, appellant.

*Benjamin Shiverts, Edmond B. Butler* and *Raymond D. O'Connell* for respondent.

FINCH, J. Whether plaintiff has made out a cause of action sufficient to sustain the finding of the jury, that the buyer and seller and so-called dummy broker have conspired wrongfully to refrain from dealing with plaintiff and thus prevented him from earning his commission, is the question presented by this appeal.

In view of the findings of the jury, plaintiff is entitled to the most favorable view of the evidence, including the reasonable inferences therefrom.

The *dramatis personæ* are plaintiff, a real estate broker, and defendants-appellants, a savings bank and one Lorber, a purchaser of real property from the bank. Defendant Geller Realty Associates is likewise a real estate broker.

On September 6, 1937, one Burrucker, an authorized employee of the bank, the owner of the property, employed plaintiff to sell the property and agreed to pay plaintiff the usual Real Estate Board brokerage commission. From September, 1937, to May, 1938, plaintiff negotiated between the bank and prospective purchasers. Between May, 1938, and July or August, 1938, plaintiff negotiated between Lorber and the bank, and induced the bank and Lorber to be satisfied with a price of $480,000, $50,000 cash and a five-year mortgage of three and one-half per cent and one per cent amortization. After Lorber had told plaintiff that he was satisfied with the terms, he asked plaintiff to wait until he had finished with his work late in the afternoon and that he would then come and talk to plaintiff. While walking together uptown, " *  *  * Mr. Lorber turned to me and said, ' Keviczky, here is about $8,500 in commission involved.' " Lorber then demanded of plaintiff that he kick back to Lorber all but $1,000 of the commission involved. Plaintiff called attention to the length of time that he had been

working on the matter and refused to part with any of his commission. It is a fair inference that Lorber thereupon conceived the plan to obtain approximately this amount of the commission and yet not lose the benefits of the terms negotiated by plaintiff. Pursuant thereto, the next day he informed plaintiff that he had decided not to purchase the property at all, as " * * * I don't like that section * . * *." Plaintiff thereupon notified Burrucker of Lorber's satisfaction with the terms and that Lorber was attempting to obtain the greater part of the commission, and notified Mr. Burrucker that if Mr. Lorber attempted to obtain the property without plaintiff, the latter expected Mr. Burrucker to protect him in the matter, to which Mr. Burrucker replied, " I will bear in mind."

Lorber in August, 1938, without the knowledge of plaintiff, takes up negotiations with the bank through Burrucker. It is a fair inference that either Lorber or the bank was afraid to complete the deal without the intervention of a dummy broker. Whether Burrucker or Lorber engaged the dummy broker Geller Realty Associates it is difficult to determine since the testimony of Lorber and Geller is contradictory. Lorber testified first that Geller made the appointment with the bank and, on cross-examination, that he, Lorber, made the appointment. The strongest inference is that Burrucker, being anxious to dispose of the property for the bank, engaged Geller; but whoever it was is immaterial, the important inference being that Geller was only a dummy broker and that Lorber was to receive the benefit of the commission to the knowledge of the bank.

Certain it is that on August 24th Geller receives the particulars of this identical property from Burrucker. Lorber thereupon went to meet Geller at a stockbroker's office and Geller at once offers the identical property at $500,000 with $50,000 cash, and Lorber states his willingness to pay that amount. A few minutes later Geller makes an appointment with Burrucker for the same afternoon, and in a meeting between Burrucker, Geller and Lorber, which lasted a very few minutes, the sales price of the property is agreed upon at $480,000 with $50,000 cash and other details practically the same as arranged by plaintiff except for some slight and immaterial variations of which there is no indication that Lorber could not have done the same through plaintiff. The next day Geller signs an assign-

ment to one Sobel, the lawyer of Lorber who up to this time has been a complete stranger to the transaction but who through the assignment is to receive from the bank $7,000 as his share of the brokerage commission out of a total commission of $8,200. August 29th the contracts are executed with the title closing about ten days later. At that time a check for the full commission was ostensibly delivered to Geller but he immediately indorses it over to Lorber upon receiving from Lorber a certified check for $1,200.

Plaintiff, learning of the sale, complains to Burrucker that the bank should not have recognized another broker in place of plaintiff, and that it aided and abetted the conspiracy by concealing its negotiations with Lorber from plaintiff, and that the bank also aided and abetted Lorber in the conspiracy to defraud plaintiff of his commission by the payment of the commission ostensibly to the dummy broker Geller but in reality to Lorber to the knowledge of the bank. Burrucker attempts to halt any contemplated legal action by plaintiff with threats that if he sues then no bank would ever be willing in the future to do business with him and, admitting the fault, says, " Now, there is other ways we will try to make up for it  *  *  *. You have been running in with offers here on a piece of property we have on East 78th  *  *  *  Street  *  *  *  and if you bring in a reasonable offer for that property I will help you to make the deal, and you will make a good commission." Direct and positive proof of a conspiracy to cheat and defraud such as is here presented is seldom, if ever, attained. Conspiracies of this nature ordinarily are not conceived and executed openly but in secret. Usually the only evidence available is that of disconnected acts on the part of the individual conspirators, which acts, however, when taken together in connection with each other, show the conspiracy to secure a particular result quite as satisfactorily and conclusively as more direct proof. (*People* v. *Flack,* 125 N. Y. 324; *People* v. *Van Tassel,* 156 N. Y. 561.)

A fair inference from the above evidence is that Burrucker, knowing through the efforts of plaintiff that Lorber wanted the property and that the terms were acceptable to him, provided that he might receive back all but approximately $1,000 of the commission allowed to the broker, sent Geller to Lorber. The bank clearly was anxious to get rid of the property and was

willing to sell for $50,000 cash on a price of $480,000, provided the buyer was responsible. The bank knew that Lorber would buy if a broker could be obtained who would accept approximately $1,000 as his share of the commission. It appears that Geller was at the bank on another deal. Geller had done business with Burrucker but never with Lorber. A fair inference from the testimony is that Burrucker said to Geller, " If you wish to make $1,000 quickly, take this property and go up and see Lorber. He is ready to buy but will not buy unless he receives back all the commission but approximately $1,000. The broker who worked out the deal refused to accept $1,000 as his share of the commission.'' The foregoing explains the fact that Lorber and Geller are supposed to have met accidentally, not in the office of either but in the office of a stockbroker with whom Geller, not Lorber, did business. Lorber and Geller discussed the deal for ten minutes and then Geller calls up Burrucker, and all three immediately get together and close the deal in a few minutes more. According to the testimony which is offered by defendants as credible, all that occurred in the broker's office is that Geller meets Lorber accidentally, presents this property to him, tells him it can be purchased for $500,000 with $50,000 cash, Lorber, of course, knowing that it could be bought for $480,000 with $50,000 cash. Lorber says nothing of this or of his recent negotiation, but says he is willing to purchase at $500,000 with $50,000 cash.

The jury is asked to believe Lorber, who had just a short time previously attempted to extract ninety per cent of a commission from a broker, when he testifies to his willingness to sign a contract to purchase property at $500,000 when he knows it can be bought for $480,000.

Going down to the broker's office, Lorber does the negotiating. Burrucker had advance notice that he was authorized to close at $480,000 because Burrucker had already received the approval of his committee in order to tell plaintiff back in July that the bank would accept $480,000 with $50,000 cash. In forty-five minutes the deal is closed for $480,000, with the terms of the mortgage and all the other details discussed and worked out. Some slight changes were made in the terms, but it is a fair inference that the only reason therefor was to try to make it appear that it was a different deal. The true nature of the

transaction is further seen by the fact that Burrucker insisted that the offer be submitted by Geller in writing. Lorber himself was finally in doubt whether he had actually signed the offer submitted or not. Apparently Burrucker was fearful lest Geller not camouflage his part as broker in the transaction. Normally, when the seller and the buyer meet together and agree upon the terms, a contract is drawn up and perhaps the broker's name inserted in the contract. The only purpose of this written offer and acceptance, which were obviously a subterfuge, was to endeavor to make it appear that Geller, as an independent broker, had brought Lorber into the bank, and to provide an indirect means of transferring back the commission to Lorber. The inference is clear, and the jury so found, that the entire matter had been rigged up by the bank to sell a piece of property at a price agreeable to them, to a purchaser who they knew was ready to buy at that figure. Both Lorber and the bank had benefited through the services of plaintiff and were perfectly willing to cheat him out of his commission. The bank urges that it did not know of Geller's agreement to split the commissions with Lorber; but they did know that plaintiff was the broker who was entitled to the commission, and not Geller. The bank was fearful that if it protected plaintiff the deal might fall through. It would have been too barefaced if the bank had reached the same result by reducing the cash payment by $7,000, and plaintiff's proof would have been easier to obtain. The evidence and the reasonable inferences from the evidence submitted to the jury preponderate in sustaining the finding of the jury that there was an agreement between the bank and Geller and Lorber to close the deal and freeze out plaintiff.

We come then to a consideration of the basis upon which plaintiff asserts his right for the wrong done him. As the learned trial court charged the jury, without exception by defendants, plaintiff does not claim that he ever did procure a purchaser. In other words, he is not suing here for commissions as such, because plaintiff admits that after he had negotiated a deal upon terms with which defendant Lorber was satisfied and which the bank was willing to accept, Lorber subsequently said that he would not go through with the deal unless a part of the commission which plaintiff was to have received would be paid over to Lorber. What plaintiff is here claiming is that

through a conspiracy which was illegal and fraudulent, entered into by these defendants, plaintiff was prevented from procuring a purchaser, and that if that scheme had not been put into operation plaintiff could have procured the purchaser and would have earned his commission. It therefore appears that plaintiff had a customer with whom he had negotiated a deal, the fruition of continuous negotiations between buyer and seller extending over many months. Upon this record it is a fair inference, and in the finding of the jury the inference is implicit, that the deal would have been closed and that plaintiff would have received his commission had not defendants, by means of this conspiracy to refrain from dealing with plaintiff, prevented plaintiff from earning his commission. In other words, plaintiff was in possession of a valuable asset in his business, of which asset plaintiff was deprived through the actions of these defendants. When appellants and Geller Realty Associates conspired to refrain from dealing with plaintiff and thus, although accepting the fruits of his labors, prevented him from earning the commission which was due him as a part of the transaction, the closing of which brought benefits to all the conspirators, an actionable wrong arose, giving rise to liability for the damages resulting therefrom to plaintiff which consisted of the amount of the commissions which plaintiff would otherwise have earned.

When we consider the remedy available, no branch of the law seems less clear than that of conspiracy. At common law there was a writ of conspiracy now obsolete, dealing with treason and felonies. A later development resulted in an action on the case in the nature of conspiracy for the damage caused to plaintiff. (*Sorrell* v. *Smith* [1925] A. C. pp. 700, 725; Harrison Conspiracy as a Crime and as a Tort in English Law.) The acquisition of this asset of the business of plaintiff against his will, and the transferring of such asset to Lorber through the fraudulent conspiracy of all the defendants, brought damage to plaintiff. The action thus falls within one of the specified categories in the law of torts entitling the aggrieved person to a legal remedy. Although forms of action have been abolished, the specified categories of wrongdoing have left their imprint upon the law, and still serve as guides. Since plaintiff would have earned the commission if defendants had not conspired

to refrain from dealing with plaintiff and thus prevented him from earning the commission, such a conspiracy is an actionable wrong giving rise to liability, and the damage resulting therefrom is the amount of the commission which plaintiff would otherwise have earned. The damage here suffered by plaintiff was the loss of an asset in his business and the acquisition by Lorber of that asset. It constituted an unjustifiable interference with the right of plaintiff to pursue his lawful occupation and to receive the earnings of his industry and the fruits of his labor. Since the triers of the facts have found upon sufficient evidence that the commission would have been received by plaintiff as the result and fruits arising from the lawful pursuit of his business or occupation, his damage arising from the fraudulent conspiracy of the defendants is recoverable.

" An injury to a person's business by procuring others not to deal with him, or by getting away his customers, if unlawful means are employed, such as fraud or intimidation, or if done without justifiable cause, is an actionable wrong." (2 Cooley on Torts, § 230.)

In *Kamm* v. *Flink* (113 N. J. L. 582) and *Skene* v. *Carayanis* (103 Conn. 708) similar damage was recovered by the plaintiff which he had suffered as the result of a conspiracy by the defendants. In *Union Car Advertising Co.* v. *Collier* (263 N. Y. 386, 401) we said: " A cause of action has also been recognized where a party *would* have received a contract but for the malicious, fraudulent and deceitful acts of a third party * * * (*Morgan* v. *Andrews,* 107 Mich. 33; *Debnam* v. *Simonson,* 124 Md. 354; *Skene* v. *Carayanis,* 103 Conn. 708; *Lewis* v. *Bloede,* 202 Fed. Rep. 7; Nims on Unfair Competition and Trade-Marks [3d ed.], § 176; *May* v. *Wood,* 172 Mass. 11, p. 14.) "

There being evidence and reasonable inferences therefrom sufficient to sustain the verdict of the jury, and the basis of the wrong asserted by plaintiff being actionable, the judgment appealed from should be affirmed, with costs.

LEHMAN, Ch. J. (dissenting). The defendant Lorber on August 19, 1938 entered into a written contract with the defendant Dry Dock Savings Institution for the purchase of an apartment house owned by the bank. The purchase price was $480,000. The plaintiff is a real estate broker who had been authorized by

the owner to offer the property for sale. He did offer the property to Lorber, but concededly Lorber never authorized him to carry to the seller an offer to buy the property. The contract of sale recites that Geller Realty Associates are the brokers who brought about the sale. The usual brokerage commissions payable upon the sale of an apartment house for $480,000 would be $8,200, and the defendant savings institution paid that amount by check dated September 10, 1938, payable to Geller Realty Associates. The check was immediately endorsed by the brokers to the order of Lorber, the buyer, and the net amount which Geller Realty Associates actually received for any services they may have rendered in connection with the sale of the real property was $1,200. The plaintiff, claiming that he had been employed by the seller to procure a purchaser for the property; that he had induced the defendant Lorber to purchase the property upon terms which the seller was willing to accept, and that the defendants — buyer and seller — had conspired " to deprive this plaintiff of the commissions which would become due to him," brought this action to recover the amount of such commissions. The plaintiff can establish his cause of action only by proof that the defendants have wrongfully conspired to deprive him of commissions which would otherwise have become due to him.

Upon the trial of the action the jury found a verdict in favor of the plaintiff for the amount of the commissions he claimed and judgment was entered upon that verdict. By the verdict of the jury all disputed questions of fact were resolved in favor of the plaintiff, and upon the appeal to this court the plaintiff is entitled to the most favorable inferences which can be drawn from the evidence.

I shall state as briefly as I can the facts thus established in plaintiff's favor. In September, 1937, the defendant bank employed the plaintiff as broker and agreed to pay the plaintiff the usual brokerage commissions if plaintiff brought to it an acceptable offer to purchase its property. In May, 1938, the plaintiff called the property to the attention of the defendant Lorber. Plaintiff sought to bring about a meeting of the minds of the seller and prospective buyer. The prospective buyer said that he was satisfied with the terms which the seller had stated it would be willing to accept, but the buyer insisted that he would

not go any further with the proposed purchase unless the broker gave him $7,200 out of the brokerage fee. On the following day the plaintiff informed Mr. Burrucker, the " real estate officer " of the bank, that the defendant Lorber refused to make an offer for the property unless he received almost ninety per cent of the brokerage commissions. A few weeks later Lorber and the bank entered into the contract of purchase and sale upon substantially the terms which Lorber had told the plaintiff were satisfactory to him.

Mr. Burrucker, the real estate officer of the bank, died before the trial of this action. The plaintiff testified: " I told Mr. Burrucker, ' Now, Mr. Burrucker, I know of Mr. Lorber and I known of his tricks, how he treats brokers,' and I says ' if he ever comes around here to get this property without me, I expect you to protect me in the matter.' Mr. Burrucker said, ' I will bear in mind.' " The jury might reasonably conclude from this testimony that Lorber refused to authorize the plaintiff to carry to the defendant bank his offer to buy the property, upon terms satisfactory to the bank, only because the plaintiff refused to pay to Lorber the larger part of the brokerage commission which the plaintiff would receive; that Lorber thereafter arranged that Geller Realty Associates should carry the offer to the bank and should act as ostensible brokers though as brokers they had done nothing to earn the commissions; and finally that the defendant bank paid Geller Realty Associates the usual brokerage commission with knowledge that they were called into the transaction by Lorber to act as ostensible brokers only for the purpose of enabling Lorber to obtain for himself the brokerage commissions which the bank was willing to pay. The jury might perhaps find too that the bank concealed from the plaintiff the fact that through other brokers it had received a satisfactory offer from Lorber. The question remains whether from such premises the ultimate conclusion may be drawn that the parties have joined in a wrongful conspiracy which caused damages to the plaintiff for which they must respond.

The plaintiff could earn the compensation which the defendant bank agreed to pay him only by performing the services required by the agreement and procuring a purchaser for the property placed in brokers' hands for sale. As the trial judge charged, at the time the plaintiff ceased to perform any services as broker,

he had failed to procure such a purchaser; for the defendant Lorber had refused to offer to pay the purchase price demanded unless the broker would agree to reimburse him for part of the purchase price by paying to him the major portion of the brokerage commissions. The amendment of section 442 of the Real Property Law, prohibiting splitting of commissions by a broker with a purchaser, became effective only on April 25, 1941. (L. 1941, ch. 719.) Prior to that time a person negotiating for the purchase of real property might lawfully refuse to proceed with the proposed purchase unless the broker would agree to pay over to him all or part of the brokerage commissions — at least unless the expectant buyer had expressly or impliedly employed the broker to induce the seller to reduce his price and had agreed with the broker that he would pay the price if the broker obtained a reduction. (Cf. *Grossman* v. *Herman,* 266 N. Y. 249.) Here the plaintiff has not pleaded a cause of action based upon such an agreement and in his brief the plaintiff expressly disclaims any right to recover upon such theory. Only when the defendant Lorber found real estate brokers willing to agree to pay him seven thousand dollars out of commissions which the brokers might receive was Lorber willing to purchase the property upon terms satisfactory to the seller, and since the plaintiff had failed to bring about a meeting of the minds between the proposed purchaser and the seller, the seller breached no contract with plaintiff by refusing to pay to the plaintiff commissions which plaintiff never earned. It violated no duty owed to the plaintiff by paying commissions to the brokers who brought the seller a satisfactory offer from Lorber and by concealing such payment from the plaintiff. (*Clinchy* v. *Grandview Dairy, Inc.,* 283 N. Y. 39.) It might have been unable to sell the property if it had acted differently.

We are told, however, that the plaintiff would have earned the commissions if the defendants — buyer and seller —·had not conspired to refrain from dealing with the plaintiff and thus to prevent him from earning the commissions. For the purpose of this appeal I assume without further consideration that such an agreement would be an actionable wrong giving rise to liability for any damages resulting from it. The difficulty still remains that the record is devoid of evidence that the defendants, singly or together, refrained from dealing with the plain-

tiff. Both desired an agreement for the purchase and sale of the real property upon satisfactory terms, and the price demanded by the seller was satisfactory to the buyer only if he could obtain partial reimbursement from the broker. The seller never offered to reduce his price. Only when a more complaisant broker was found did the minds of buyer and seller meet upon the terms of sale. Since the plaintiff did not bring that about he has no right of action against the parties for reaching an agreement which was satisfactory to the buyer only upon conditions which the plaintiff was unwilling to meet.

The judgments of Special Term and Appellate Division should be reversed with costs in all courts and the complaint dismissed.

RIPPEY, LEWIS and CONWAY, JJ., concur with FINCH, J.; LEHMAN, Ch. J., dissents in opinion in which LOUGHRAN and DESMOND, JJ., concur.

Judgment affirmed. (See 290 N. Y. 855.)