FRANKLIN ENTERPRISES CORP., Plaintiff, *v.* KING REFRIGERATOR CORP., Defendant.

Supreme Court, Special Term, Queens County, April 20, 1955.

*Winick, Hoffman & Grumet* for defendant.

*Sylvain Segal, Jr.,* for plaintiff.

COLDEN, J.   Motion to dismiss an amended complaint for legal insufficiency.

Plaintiff alleges, in substance, that it and other dealers market automatic home freezers, often selling them under conditional sales contracts.  Prior to October 10, 1954, certain of those other dealers offered to pay plaintiff commissions for financing their conditional sales contracts.  Thereafter and on or about that

date plaintiff informed Consumer's Time Credit, Inc. (herein-after referred to as Consumer's) of the offers plaintiff had received from those dealers and entered into negotiations with Consumer's for an agreement whereby plaintiff would be enabled to discount with Consumer's the conditional sales contracts of other dealers. After being informed by Consumer's that such an agreement would be satisfactory, plaintiff gave to Consumer's, at its request, a list of credit references. Thereafter plaintiff notified the other dealers that their offers would be accepted, and made arrangements with them to effectuate the financing of their contracts. One of the credit references given by plaintiff to Consumer's was the defendant. The latter, upon learning of the proposed agreement between plaintiff and Consumer's, sent its sales manager to Consumer's for the purpose of inducing it not to enter into that agreement. Defendant informed Consumer's that the former would have the contracts of the other dealers brought directly to Consumer's for discount rather than have them financed by plaintiff and then discounted by Consumer's, thus inducing Consumer's not to enter into its proposed contract with plaintiff. Defendant also induced the other dealers not to finance their contracts with plaintiff since defendant could get them immediately discounted with Consumer's for a lower commission than that to be charged by plaintiff provided that said dealers purchased their freezers intended for marketing exclusively from defendant. On or about November 20, 1954, Consumer's informed plaintiff that the terms of their proposed agreement were no longer satisfactory since Consumer's could now discount the other dealers' contracts without plaintiff's aid; and subsequently the other dealers discontinued their arrangements with plaintiff. It is then alleged that by reason of the wrongful and malicious interference of defendant, plaintiff was deprived of a prospective economic advantage and that '' the sole and substantial reason for the rejection of the proposed agreement by Consumers and the discontinuance of the aforesaid arrangements with the third parties [referred to above as other dealers] and the resultant deprivation suffered by plaintiff of its prospective economic advantage as aforesaid, was the malicious and intentional interference of defendant ''.

Plaintiff concedes that this is not an action based upon wrongful interference with an existing contract. It contends, however, that this is an action based upon wrongful interference with a prospective economic advantage. Such an action, it has been said, is recognized '' where a party *would* have received a con-

tract but for the malicious, fraudulent and deceitful acts of a third party, such, for instance, as materially lying about him. * * * There must be some certainty that the plaintiff would have gotten the contract but for the fraud. This cannot be left to surmise or speculation." (*Union Car Adv. Co.* v. *Collier,* 263 N. Y. 386, 401 [emphasis in original]; see, also, *Duane Jones Co.* v. *Burke,* 306 N. Y. 172, 190; *Keviczky* v. *Lorber,* 290 N. Y. 297, 306.)

The difficulty with the complaint, as it stands, is twofold: In the first place, plaintiff has stated no *facts* showing that it would have obtained the contracts had defendant not interfered. As the Appellate Division of this Department said in *Portman* v. *Burack* (265 App. Div. 959, affd. 290 N. Y. 686): " The complaint does not contain facts sufficient to show that, if defendants had not interfered, plaintiff would have earned a commission. (*Union Car Advertising Co.* v. *Collier,* 263 N. Y. 386, 401.) The words ' that the plaintiff's negotiations proceeded to a point where a contract of sale would probably have resulted, except for the conduct of the defendants, hereinafter described ' are not sufficient even if the word ' probably ' had been omitted. They are merely a statement of a conclusion. If facts were stated showing that negotiations between plaintiff and defendants had reached a stage as a result of which plaintiff would have earned a commission if it were not for the alleged deceit of defendants, a cause of action would have been stated. (*Union Car Advertising Co.* v. *Collier, supra*; *Skene* v. *Carayanis,* 103 Conn. 708.) " In the second place, this court does not believe that the conduct ascribed to defendant is actionable. The following excerpt from the opinion of Judge CRANE in *Union Car Adv. Co.* v. *Collier* (263 N. Y. 386, 395–396, *supra*), seems peculiarly appropriate here: " Let us assume, even if it is not clear and apparent from the evidence, that political influence was brought to bear, that friends persuaded, and that well-known counsel argued regarding the letting of this contract. There is nothing in all these matters which is unfair competition or foreign to present business competitions. Competitors for a large contract or the purchase or sale of goods are in a struggle and a fight not only for business but sometimes for very existence and all kinds of methods are devised for creating a favorable impression or an advantage. Whatever we may personally think about these selfish, fierce and unfriendly contests for gain and for profit, the law is indifferent. *Not until false, fraudulent and malicious methods are used to kill off a competitor does the law take notice.*" (Emphasis supplied.)

*Keviczky* v. *Lorber* (*supra*), heavily relied upon by plaintiff, is clearly distinguishable. There, a broker succeeded in obtaining a buyer satisfied with the terms upon which a bank was willing to sell certain real property. The buyer, however, demanded that the broker kick back a very substantial part of the commission to which he was entitled under the prevailing rates. When the broker refused to do so the buyer informed him that he had decided not to buy the property. Shortly thereafter the deal was consummated between the same parties at virtually identical terms through another broker which accepted a small part of the total commission. The first broker sued the buyer, seller and second broker for conspiracy and recovered a judgment which was sustained both by the Appellate Division and the Court of Appeals. Judge FINCH, writing for the majority in the Court of Appeals, observed that " Direct and positive proof of a conspiracy to cheat and defraud such as is here presented is seldom, if ever, attained " (290 N. Y. 302). While the conduct ascribed to defendant here may well have been shabby, it can hardly be described as having been fraudulent and deceitful. As demonstrated by the authorities discussed herein, it is not every interference with a prospective economic advantage which is actionable, but only such interference as smacks of fraud.

The motion is accordingly granted with leave to plaintiff, if it be so advised, to serve a further amended complaint within ten days after service of a copy of the order to be entered hereon, with notice of entry.

Submit order.