NATHAN NIRENSTEIN, Respondent, *v.* GEORGE A. HORVATH, INC., et al., Defendants, and LAWRENCE DIAMOND et al., Appellants.

Second Department, June 30, 1955.

*Peter H. Kaminer* and *William W. Karatz* for appellants.

*Samuel Shapiro* for respondent.

NOLAN, P. J. The original complaint in this action alleged four causes of action. In substance it alleged that respondent had been employed by Messrs. Myers, Donna and McCormick, as agents for certain stockholders in a corporation known as Monument Mills, Inc., to obtain a purchaser for such stockholders' shares at a price of $60 a share; that respondent subsequently entered into an agreement with appellant Diamond under which he and Diamond agreed to endeavor jointly to obtain a purchaser of said stock and to divide any brokerage commission received by reason of such sale; that thereafter a sale of the stock to defendant Horvath, Inc., was effectuated through Diamond; that Diamond, as a result of such sale, had received or was entitled to receive as commission the sum of $50,000; that respondent was entitled to receive one half of such commission; and that appellant Gilman and defendants Horvath and Horvath, Inc., joined Diamond in a fraudulent scheme to deprive respondent of his share of such commission.

The first cause of action based on these allegations was against Diamond for breach of his agreement to share his commission with respondent. The trial court dismissed it with respondent's consent after the court had questioned his proof regarding any benefits received by Diamond from the alleged sale. The second cause of action was for breach of contract against Horvath, Inc., as the purchaser of the stock in question. It also was dismissed upon consent, respondent conceding failure of proof. The third cause of action was based on an alleged conspiracy among Diamond, Gilman, Horvath and Horvath, Inc., to deprive the respondent of his commission. It also was dismissed upon consent. The fourth cause of action was one for money had and received. It also was dismissed upon consent.

Only the fifth cause of action, which was added at the opening of the trial, was submitted to the jury. The allegations of this cause of action are that in March and April of 1948 the agreement between the agents for the Monument Mills stockholders and respondent as well as that between Diamond and respondent was modified; that under the modified agreement between respondent and the stockholders' agents he was entitled to a commission of $3 for each share of stock sold at $53 a share or such other price as might be accepted by the agents; that under the modification of his agreement with Diamond, respondent and Diamond were to become cobrokers and if a sale of the Monu-

ment Mills stock should be brought about at a price acceptable to the stockholders' agents, respondent and Diamond would divide equally the $3 a share commission paid by the seller to the brokers; that Diamond interested Horvath, Inc., in the purchase of the stock and that Horvath, Inc., purchased the same; and that Diamond, Gilman, Horvath, and Horvath, Inc., conspired to cheat respondent out of the benefits from the agreements summarized above by inducing the Monument Mills agents to commit a breach of their agreement and Diamond to breach his agreement with respondent to his damage in the amount of $25,000.

There does not appear to have been any answer to the allegations of this cause of action. However, the parties proceeded to trial upon the apparent assumption that these allegations had been denied, and the case was submitted to the jury with instructions that in order to recover, respondent was required to prove certain of the allegations heretofore referred to. Respondent makes no point in this appeal that there was no issue raised with respect to his pleading, and in accordance with the apparent understanding of the parties we shall consider appellants' answer as amended, at least to the extent sufficient to raise the issues submitted to the jury. (Cf. *Farmers' Loan & Trust Co.* v. *Housatonic R. R. Co.*, 152 N. Y. 251, 254; *Sweeney* v. *City of New York*, 225 N. Y. 271, 274; *Pattison* v. *Pattison*, 301 N. Y. 65, 68, and *Neale & Co.* v. *New York So. Coal Term. Corp.*, 270 App. Div. 816, 817, affd. 295 N. Y. 977.)

It was established on trial that on February 5, 1948, Messrs. Myers, Donna and McCormick wrote respondent two letters. The first letter authorized him to undertake to bring about the sale of not less than 8,000 and not more than 14,000 shares of the stock of Monument Mills at a gross cash price of $60 a share subject to certain conditions. The second letter stated that if such sale should be effected at such price and subject to all conditions mentioned, respondent was to receive $3 a share so that the net price received by the shareholders, the principals of the writers of the letter, would be $57 a share. The first letter specifically provided that respondent's authority to bring about such sale was limited to a period of ninety days from the date of the letter, which was February 5, 1948. Thus, respondent's written authority to act as broker expired on May 5, 1948, more than four months prior to the actual sale of the Monument Mills stock.

Respondent testified that in addition to this written agreement he had an oral understanding with Myers, which was arrived at

sometime in March of 1948, pursuant to which he was authorized to submit to Myers the best offer he could obtain and that if he submitted a satisfactory offer he was to be paid a commission of $3 a share, upon the sale of the stock.

Thereafter, respondent was informed by Gilman that one Shikiarides was interested in purchasing the stock. Shikiarides made an actual offer for the purchase of the stock which was embodied in a document dated April 6, 1948, addressed to Messrs. Myers and Donna and signed by Diamond. That paper contained an offer to purchase 14,000 shares of the outstanding stock of Monument Mills at $53 a share. The writing states that Diamond is the agent for the proposed buyer of the stock, that respondent is the seller's agent, and that each is to get a commission of $1.50 a share payable by the seller. The attorney who drafted the offer testified that it was prepared at the request of Mr. Shikiarides, who was a client of his firm. He also testified that the document was prepared only for this particular transaction. The offer was not accepted.

It was appellants' contention, on trial, that, after the attempted sale to Shikiarides failed to materialize, they had no further interest in or connection with the transaction and that the only arrangement they ever made with respondent with respect to brokerage is contained in the letter of April 6th. It is respondent's contention, however, that this letter is evidence of an agreement which he claimed to have made with Diamond, to the effect that they should join in an effort to sell the stock, and that if either should effect a sale, a commission of $3 a share would be divided between them. While the evidence is not entirely clear as to this agreement, we shall assume that it was sufficient to permit a finding by the jury that if Diamond produced a purchaser for the stock, he was to share with respondent the commissions which he might collect for his services.

About five months after the submission of the offer from Shikiarides, there was made to all Monument Mills stockholders a written offer to purchase all shares which should be deposited pursuant to its terms. The price offered was $50 a share. The offer was made by Horvath, Inc., whose president testified without contradiction that it thus acquired all the outstanding shares of Monument Mills. The number of shares so acquired was 15,882. The written offer for the purchase of the stock also provided that the buyer was to pay Myers as compensation for his services $1 a share for each share of stock deposited pursuant to the offer, and also that, in the event that the deal should

not be consummated, Myers was to receive $.50 a share for all shares deposited with him prior to a certain date. The offer made no mention of Diamond or Gilman or respondent in any connection whatsoever. Concededly, respondent had nothing to do with the bringing about of the sale of the stock to Horvath, Inc.

Diamond and Gilman testified that they had no further part in any negotiations for the sale of any Monument Mills stock after the Shikiarides' deal fell through. There is no evidence that any commissions of any kind were paid to Gilman or Diamond by reason of that sale.

Horvath, on trial, testified that Diamond brought the Monument Mills to his attention and there is further evidence of a conversation between respondent and Diamond (denied by Diamond) which might be considered an admission by Diamond that he had brought about the sale of the stock to the Horvath corporation. There is no evidence, however, that Diamond ever notified Myers that he had interested Horvath in the purchase of the stock, or that he took any part in the negotiations leading up to the sale. Neither is there any evidence that Myers recognized Diamond as the broker who brought the sale about.

In charging the jury, the trial court stated that in order to recover against appellants, respondent was required to establish that he had a contract with Myers and his associates, pursuant to which he would be entitled on a sale of the stock to a commission of $3 a share. He further charged that respondent '' must prove, in order to succeed in this particular case, that he entered into a further agreement with Diamond to the effect that from that time on he and Diamond were literally to be partners in any deal with respect to Monument stock and that if either one obtained a buyer independently of the other they would share the commissions. In other words, from then on, Nirenstein and Diamond were partners to get a purchaser for the stock in Monument.''

The court further charged that respondent was also required to prove that Myers knew of the arrangement between Diamond and respondent that if Diamond brought in a buyer respondent was to share in the commission, because admittedly it was Diamond or Gilman and not respondent who had produced Horvath; that Diamond did in fact produce Horvath and that in order to induce Myers to sell the stock to Horvath, without paying respondent a commission, Myers was paid $1 for each share of stock sold; and that it was respondent's contention that the payment to Myers was a bribe to induce Myers to breach his agreement with respondent.

It had been conceded by respondent, on trial, that the only evidence that Myers had been induced to repudiate his contract with respondent was the fact that Myers was paid a commission of $1 a share on the sale of the stock. He further conceded that if that evidence was not sufficient he was "out of court". Although it had been contended that the payment was made pursuant to a conspiracy between appellants and the defendants Horvath, the trial court charged that it was not necessary for the jury to find, in order to hold appellants liable, that Horvath had any part in the conspiracy. He also charged that no defendant could be held liable unless he was a party to the conspiracy. By the jury's verdict, appellants were held liable and, although concededly the payment relied on as the sole evidence of an inducement to Myers had been made by Horvath, Inc., the Horvath defendants were exonerated.

It would be easier to understand the verdict if it had been established that Diamond received some compensation for his services in bringing about the sale of the stock, or had concealed his participation in the transaction by the substitution of a dummy broker. There is no such evidence, however, and it is somewhat difficult to understand why appellants should have bribed Myers to conceal from his principals the fact that Diamond had earned a commission. We find in the record no evidence which would justify such an inference. Neither do we find in the record evidence that Myers and his associates had any contract with respondent, which may be held to have been violated by a failure or refusal to pay commissions to respondent on the sale of the Monument stock. There is evidence which would support a finding that respondent was to be paid a commission if he produced a purchaser satisfactory to the Monument stockholders. There is no evidence, however, that Myers ever agreed to pay respondent a commission if some other person produced a purchaser. Respondent's only other agreement, if he had any which survived the original ninety-day employment, was with Diamond. If he produced a purchaser, he was to share his commissions with Diamond, and if Diamond produced the purchaser Diamond was to share his commissions with respondent. There is no evidence that Myers had any knowledge of such an agreement, or acquiesced in it. Appellants may not be held liable for inducing Myers to breach or repudiate a contract which he had never made. If it be assumed that Myers had knowledge of the arrangement between appellants and respondent, however, and had agreed to pay commissions to both respondent and Diamond, there is no evidence that appellants

induced Myers to violate that agreement. The fact that Myers who had been endeavoring for some time to effect a sale of the stock was paid a commission by the purchaser falls far short of establishing any inducement by appellants or Horvath to violate any agreement which he may have had with respondent. While there is no evidence as to the financial arrangements between Myers and his principals, it is not unreasonable to assume that he was to be compensated for his services. Although payment for such services would ordinarily be made by the principals, no inference of dishonesty should arise from the fact that the payment was made by the purchaser, as part of the purchase price of the stock, if the facts were known to, and the arrangement was acquiesced in, by the principals. Apparently no attempt was made to conceal this payment, made pursuant to a written offer which presumably was submitted to, and approved by, the Monument stockholders.

"While it is true that a material fact may be established by circumstantial evidence, yet the circumstances must be such as to lead fairly and reasonably to the conclusion sought to be established, and fairly and reasonably exclude any other hypothesis. A party relying upon the establishment of a cause of action, or remedy against another, based upon wrongdoing, must show affirmatively facts and circumstances necessarily tending to establish a probability thereof. When the evidence is capable of an interpretation which makes it equally as consistent with the innocence of a party as with his guilt, that meaning must be ascribed to it which accords with his innocence." (*Shotwell* v. *Dixon,* 163 N. Y. 43, 52; *Digelormo* v. *Weil,* 260 N. Y. 192; *Lahr* v. *Tirrill,* 274 N. Y. 112; *Beattie* v. *Beattie,* 83 Hun 295, affd. 153 N. Y. 652.)

Fraud is a serious charge. It is not presumed. The finding of the jury, implicit in the verdict, that Myers accepted a bribe and was consequently unfaithful to his trust, insofar as the Monument stockholders were concerned, and dishonest in his dealings with respondent, rests on mere speculation and conjecture, and may not be sustained.

Even if it be assumed that the payment of a commission to Myers was made, as respondent contends, to induce him and his associates to repudiate a contract with respondent, the record is, nevertheless, devoid of proof that appellants had anything to do with the payment made. Concededly, the payment of the commission was made, not by appellants, but by Horvath or his corporation. It was respondent's contention, however, that the payment was made as part of a conspiracy between

appellants and the Horvath defendants. The jury found, by its verdict in favor of those defendants, that there was no such conspiracy. The finding, permitted by the trial court's charge, and implicit in the verdict, that the payment was made innocently by Horvath, although induced by appellants, pursuant to a corrupt agreement between appellants and Myers, is again nothing more than a surmise, which finds no support in the evidence.

Finally, we find no proof of damage, which is an essential element of the cause of action which respondent attempted to establish. (*Simon* v. *Noma Elec. Corp.,* 293 N. Y. 171.) The trial proceeded on the theory that respondent had not been paid a commission on the sale of the stock and the jury was required to find, in order to arrive at the determination under review and apparently did find, that the commission had been earned. Consequently, respondent is in no position to claim that he had been prevented from consummating his contract by reason of the wrongful interference of appellants and that the judgment should be affirmed on that theory. (Cf. *Keviczky* v. *Lorber,* 290 N. Y. 297, and *Cohen* v. *City Bank Farmers Trust Co.,* 276 App. Div. 195.) Although respondent asserts that commissions have been earned, there is no substantial evidence that any demand therefor has been made on Myers or his associates, or the Monument stockholders, nor is any reason suggested why, if commissions have been earned, they cannot be collected. (Cf. *Simon* v. *Noma Elec. Corp., supra; Shapiro* v. *Greenwich Sav. Bank,* 266 App. Div. 359; *Kalmanson* v. *Callahan,* 276 App. Div. 983, and *Muldoon* v. *Silvestre,* 283 App. Div. 886.) Whatever respondent's rights or those of Diamond may be as against the Monument stockholders, respondent has established no cause of action against appellants on any theory presented.

The judgment should be reversed, on the law and facts, with costs, and the complaint should be dismissed. Findings of fact, implicit in the verdict, and contrary to the foregoing, should be reversed.

BELDOCK, J. (dissenting). The facts in this case must be reviewed in the light of the rule that "Direct and positive proof of a conspiracy to cheat and defraud * * * is seldom, if ever, attained. Conspiracies of this nature ordinarily are not conceived and executed openly but in secret. Usually the only evidence available is that of disconnected acts on the part of the individual conspirators, which acts, however, when taken together in connection with each other, show the conspiracy to secure a particular result quite as satisfactorily and conclusively

as more direct proof." (*Keviczky* v. *Lorber*, 290 N. Y. 297, 302.)

The jury was free to find from the evidence presented that respondent was employed as a broker by the agents for the stockholders of Monument Mills and was to be paid a commission of $3 a share if he procured a buyer at a satisfactory price; that respondent thereafter made an agreement with Diamond that, if respondent or Diamond obtained a purchaser, they would divide equally the commission of $3 a share; that $50 a share net to the sellers was a satisfactory price; that a proposed deal in April, 1948, at that net price was not completed because respondent " held out for his $3 "; that on September 14, 1948, defendants Horvath contracted to purchase the outstanding shares at $51 a share; that the agreement of September 14, 1948, did not provide for a commission to either respondent or appellants, despite the fact that appellants brought about the sale to defendants Horvath; that, instead, the agreement provided for compensation of $1 a share to Myers, one of the agents for the selling stockholders. In my opinion, this evidence is sufficient to justify the affirmance of this judgment.

In *Keviczky* v. *Lorber* (*supra*) plaintiff, a broker, had an agreement with defendant bank for commissions if he procured a purchaser. The purchaser procured by plaintiff refused to complete the purchase through plaintiff as broker because plaintiff refused to " kick back " part of the commission to the purchaser. The sale was thereafter completed through a dummy broker. The Court of Appeals affirmed a judgment for plaintiff against the solvent seller, the purchaser, and the dummy broker for conspiracy which prevented plaintiff from procuring the purchaser and earning his commission.

In the case at bar, appellants knew, as the result of the transaction in April, 1948, that respondent refused to waive any part of his commission. Therefore, Horvath, who was an intimate social and business friend of appellants for fifteen years, completed the written agreement of sale without naming respondent or appellants as brokers. Instead, by paying Myers a commission of $1 a share, Horvath, in effect, received a rebate of $2 of the commission of $3 a share, with the sellers receiving the same net price of $50 a share, whether Myers received the commission of $1 a share by the purchaser completing the sale through Myers at $51 a share, or purchasing through respondent at $53 a share and being required to pay respondent a commission of $3 a share. On this evidence, the jury was free to find that the deal would have been closed and that respondent would

have received his commission had not appellants, by means of this conspiracy, prevented him from earning his commission.

Nevertheless, the majority prefers to reverse this judgment and dismiss the complaint because, in its view, respondent has not made out a case as a matter of law. In my opinion, none of the reasons presented by the majority is sufficient upon which to predicate reversal.

The prevailing opinion states that there is no evidence that the agents for the Monument Mills stockholders knew of the agreement between respondent and Diamond to share commissions and, therefore, there is no proof that the agents were required to pay respondent a commission if his coadventurers produced the purchaser. There are at least two answers to this statement: (1) the agents knew that respondent and appellants were coadventurers with respect to the written offer of April 6, 1948, and the jury had the right to find that the agents knew they continued as coadventurers as to future prospective purchasers; (2) even if the agents did not know that respondent and appellants continued as coadventurers, the agents would be obliged to pay respondent a commission if in fact he and appellants were coadventurers and if in fact defendants Horvath were produced by respondent's coadventurers (*Sussdorff* v. *Schmidt,* 55 N. Y. 319; *Lloyd* v. *Matthews,* 51 N. Y. 124) were it not for the facts already mentioned which prevented respondent from being deemed the procuring cause of the sale.

The majority states that there is no evidence that appellants conspired with Horvath to repudiate the agreement between appellants and respondent to share commissions because respondent had no contract with appellants which required them to collect commissions or to pay respondent commissions earned by them but not collected. In my opinion, appellants owed respondent as a coadventurer a fiduciary obligation which prevented them from waiving respondent's share of any commissions to which they might become entitled. (*Meinhard* v. *Salmon,* 249 N. Y. 458.)

The majority states that there is no evidence that appellants induced Myers, one of the agents of the stockholders, to violate the agreement to pay respondent and appellants commissions. The direct results of the sale to Horvath at the gross price of $51 a share under the terms of the contract of September 14, 1948, were (a) to disable respondent and appellants from procuring a buyer under the terms of respondent's employment by the agents, namely, at a gross price of $53 a share, and thus

to prevent any right to a commission from accruing either to respondent or appellants under the terms of respondent's said employment; (b) Horvath was thus enabled to obtain a rebate of $2 a share of the commission of $3 a share which the sellers had agreed to pay, but which respondent had refused to split, Horvath being able to accomplish this purpose by paying a commission of $1 a share to the agent of the sellers as an inducement; (c) the net price to the sellers of $50 a share remained the same whether the sale was consummated at $53 a share with a commission of $3 had the contract named respondent or appellants as brokers or $51 a share with a commission of $1 a share to the sellers' agent. The jury was free to find that these facts amounted to guilty conduct on the part of appellants and the stockholders' agent. I do not agree with the holding of the majority that, as a matter of law, this combination of facts points only to innocence, having in mind the admonition of the Court of Appeals that usually the only evidence of conspiracy available is that of disconnected acts on the part of the conspirators, which, when taken together, show a conspiracy as satisfactorily and conclusively as more direct proof.

That appellants conspired to bring about the payment by Horvath of the commission of $1 a share to Myers might be found by the jury, not only from the evidence stated in the foregoing paragraph, but also from Diamond's promise in October, 1948, to pay respondent his share of the commission when he, Diamond, received his money.

The majority states that it does not understand the verdict because there is no proof either that Diamond received any compensation for his services in bringing about the sale of the stock or that he concealed his participation in the transaction by the substitution of a dummy broker. In my opinion, the proof of those two factors is plain. Horvath benefited by the connivance of appellants to the extent of $2 a share. Horvath was appellants' social and business friend for fifteen years. He rewarded appellants through the years, both before and after September, 1948, with profitable business transactions. In addition, there is the mentioned evidence of Diamond's promise in October, 1948, to pay respondent his share of the commission when he, Diamond, received his money. The majority admits that the jury could find from the evidence that Diamond brought about the sale of the stock to Horvath. The jury was free to find that the provision in the agreement of sale for the payment to Myers of $1 a share commission, when Myers did not bring

about the sale, was the substitution of Myers as the dummy broker for appellants or their coadventurer, the respondent.

Finally, the majority states that respondent has not proved damage by reason of the conspiracy, i.e., he still has a cause of action against the seller and there is no proof of the insolvency of the seller. It should be noted that such insolvency of the seller must be proved only in an action to induce a breach of contract between the broker and the seller where the seller has earned his commissions. (*Shapiro* v. *Greenwich Sav. Bank*, 266 App. Div. 359, affd. 293 N. Y. 724.) Although the action may have been misnamed in several places in the record as one to induce the breach of a contract, it is clear that the action was not tried on that theory. Appellants did not move to dismiss the complaint on the ground that there was no proof of damage, nor was any request to charge made as to the necessity of proof of insolvency of the seller. On the contrary, the action was tried as one in conspiracy not to deal with respondent or appellants as brokers, but to substitute Myers as broker and to pay Myers a commission of $1 a share, and thus to cheat respondent out of his commission. That was the theory on which the case was submitted to the jury, without exception by any of the parties. In an action of this kind for damages resulting from conspiracy which *prevented respondent from earning a commission*, it is not necessary that he prove the insolvency of the seller in order to recover. (*Keviczky* v. *Lorber*, 290 N. Y. 297, *supra.*)

Although I favor affirmance, if the judgment is to be reversed, there should not be a dismissal of the complaint but rather a new trial on the ground that appellants are liable to respondent because of breach by them of the fiduciary obligation which rested on them as joint venturers with respondent to develop every possible business opportunity for the benefit of all, and not to prevent or frustrate respondent's earning a commission by instigating another to take advantage of the opportunity for the sole benefit of that other. (*Meinhard* v. *Salmon*, 249 N. Y. 458, *supra.*)

The judgment should be affirmed.

SCHMIDT, J. (dissenting). There was sufficient evidence upon which the jury had the right to determine that the appellants were joint tort-feasors and that their wrongful conduct had caused the respondent to be deprived of commissions in the amount found by the jury. This conclusion is all the more justified when it is considered that, after a jury's verdict, the

record must be viewed in the light most favorable to the prevailing party. (*Keviczky* v. *Lorber,* 290 N. Y. 297, 300; *Shell Oil Co.* v. *State Tire & Oil Co.,* 126 F. 2d 971, 972.)

WENZEL and MURPHY, JJ., concur with NOLAN, P. J.; BELDOCK, J., dissents and votes to affirm, with opinion; SCHMIDT, J., dissents and votes to affirm, with memorandum.

Judgment reversed, on the law and the facts, with costs, and complaint dismissed. Findings of fact implicit in the verdict and contrary to the opinion are reversed.