Samuel S. Tripp, Spec. Ref.
At the commencement of the trial of this special proceeding brought pursuant to CPLR 5227, the respective attorneys for the appearing parties consented on the record, pursuant to CPLR 4317 (subd. [a]), that this reference be to hear and determine instead of to hear and report as provided in the order of Mr. Justice Roe dated June 19, 1967. (Rayex Corp. v. Sanchez, 6 A D 2d 903.)
In an action to recover a balance for legal fees and disbursements, petitioner, a firm of attorneys, docketed a default judgment for $30,088.49 against Sports Arenas, Inc., hereinafter Sports, on December 29,1966 in the office of the County Clerk of New York County, Index Number 18362/1966. Less than two months prior to this judgment, petitioner obtained an order of attachment, dated November 10, 1966, a copy of which was filed on November 21, 1966 in the office of the Sheriff of the City of New York, Queens County Division. Copies thereof were served by a Deputy Sheriff on Sports and respondent Arthur M. Abbruzzese on November 22, 1966.
*785 According to the sublease dated November 10, 1964 between Sports and the respondent, the former was “ not the owner of the demised premises [at 32-45 75th Street, Jackson Heights, Queens County] but * * * the successor by merger to Northern Lanes, Inc., a tenant under a lease (‘ Major Lease ’) thereon dated February 26, 1959 from Rush Realty Corp. for a term of twenty-one (21) years ” for several bowling alleys, a restaurant, a bar and a shop for the sale of bowling supplies. The sublease demised a portion of these premises to respondent, at a rental payable in monthly installments in advance on the first of each month based upon a percentage of his gross sales, for a term commencing on November 10, 1964, and expiring on November 30,1969, with a five-year renewal option.
Respondent, examined by petitioner pursuant to a subpoena with restraining notice served on February 2, 1967, furnished an affidavit, sworn to on February 24, 1967, that he operates a luncheonette and bar concession at the leased premises on a percentage rental basis averaging about $5,000 a year; that because “ of the service of the warrant * * * [of] attachment ” on him, he did not pay rent for the months of November, December, 1966 and January, 1967, and that “ the amount of rent owed is as follows: November, $662.78; December, $663.48 and January, $530.11 for a total of $1856.37.”
The instant special proceeding was commenced by petitioner against the respondent on March 14,1967. Copies of all papers, including the foregoing affidavit, were served on Sports by certified mail, return receipt requested, addressed to 8730 Wilshire Boulevard, Beverly Hills, California. Therein judgment is sought directing respondent to pay the petitioner the aforesaid $1,856.37 and “ all sums that become due on * * * [the] percentage lease * * * executed with the judgment debtor # * * [Sports] as they become due on account of” the $30,088.49 judgment, upon the ground that respondent is indebted to Sports, who in turn is indebted to petitioner “ for an amount in excess of moneys ” held by respondent.
Neither respondent nor Sports appeared or submitted opposing papers. Instead, B.A.I., Inc., a California corporation, designating itself as “ intervening petitioner ”, voluntarily appeared and submitted affidavits by its president and its New York attorney demanding that: “ (i) judgment be entered against respondent directing respondent to pay to B.A.I. Inc., the sum of $1,856.37, as well as all future sums which may accrue under and pursuant to the lease between respondent and Sports, dated November 10, 1964; (ii) judgment be entered restraining and precluding respondent from paying any sums of money *786 under the lease dated November 10, 1964 to plaintiff-petitioner herein; and (iii) judgment be entered denying any interest of plaintiff-petitioner in and to the matured or future proceeds payable by respondent under the lease dated November 10, 1964.”
The foregoing demand is based on the claim asserted by the intervening petitioner that ¡Sports ‘‘ as tenant and sub-landlord, assigned to Econo-Control, Inc. (‘ Econo ’), a wholly owned subsidiary of BAI .(with identical management control) all of Sports’ rights in and to the November 10, 1964, sub-lease agreement between Sports (sublandlord) and respondent (subtenant). The assignment was dated December 12,1966. Such assignment agreement recited therein that the assignment ‘ shall be effective as of October 13, 1966 * * * ’. BAI assumed actual working control of the assigned premises as of October 13, 1966, and advanced funds to ¡Sports and paid the bills for the assigned premises as of October 31, 1966.” (Intervening petitioner’s posttrial memorandum received on June 15,1968.)
Subsequent to the commencement of the instant special proceeding, petitioner issued an execution, dated March 11, 1968, on its judgment docketed on December 29, 1966, containing a notice to the garnishee, the. respondent herein, that he “ is a lessee of judgment debtor and owes rent accruing thereunder from November 1,1966 ”. This execution was filed in the office of the Sheriff of the City of New York, Queens County Division, on March 25, 1968 and two days later a Deputy Sheriff served a copy thereof on the respondent. The latter had paid no rent to his landlord since “ around November 9th or so ” when he paid the rent that became due for the month of October, 1966. Because of the attachment levy on November 22, 1966, he paid no further rent but set aside the monthly rental payments as they became due since November, 1966 and deposited them in a separate savings account in his own name with Bankers Trust Company, Jackson Heights, Queens County, New York, branch.
In his memorandum decision dated May 12, 1967, upon which the order of reference was entered, Mr. Justice Bob sustained the informal intervention by B.A.I., Inc., in claiming as the transferee of the debt consisting of rents under the sublease, the $1,856.37 which was the subject of this proceeding when originally commenced “ as well as all future sums which may accrue under and pursuant to the lease between the respondent and Sports, dated November 10, 1964.” (See “ Wherefore ” clause in affidavit of B.A.I.’s attorney, sworn to April 5, 1967.) By the time this proceeding was finally submitted on July 9, 1968 by the filing of a stipulation dated July 8, 1968 executed by the *787 attorneys for petitioner and B.A.I., Inc., agreeing to certain material facts and additional exhibits, unpaid rents had accrued through March, 1968 totalling $7,591.35 from November 1, 1966. According to the foregoing stipulation this sum was turned over by respondent to the Sheriff’s office, Queens 'County, pursuant to petitioner’s property execution “ and the funds are presently on deposit with the aforesaid Sheriff, per the attached certificate ”. That certificate, made by the Under Sheriff, in charge of Queens County Division, on June 26, 1968, states that his office received on May 16,1968 from respondent’s attorneys an official check of Bankers Trust Co., in the sum of $7,591.35 “ in an execution in the above entitled action dated March 11, 1968 filed in the Sheriff’s Office on March 25, 1968 and pursuant to a levy made * * * on March 27, 1968 by service of a copy of said execution on the said garnishee ”, the respondent herein, which “ sum of $7,591.35 is on deposit in the Trust Account of the Sheriff of the City of New York, Queens County Division.”
Absent a motion at the trial addressed specifically to any variance between the petition and the proof in which event petitioner could have successfully moved to conform the pleadings to the proof, the parties are deemed to have elected to ‘ ‘ depart from the strict issues made by the pleadings and * * * [tried] other questions relating to the merits of the controversy by consent or acquiescence ”. (Farmers’ Loan & Trust Co. v. Housatonic R. R. Co., 152 N. Y. 251, 254; see, also, Pattison v. Pattison, 301 N. Y. 65, 68, Gillies v. Manhattan Beach Improvement Co., 147 N. Y. 420, 423-424; Fallon v. Lawler, 102 N. Y. 228, 233, Nirenstein v. George A. Horvath, Inc., 286 App. Div. 409, 412.) In any event, the pleadings herein are now amended to conform to the proof in accordance with the motion made in petitioner’s reply brief served on July 9, 1968. (CPLR 3025, subd. [c]; Dittmar Explosives v. A. E. Ottaviano, Inc., 20 N Y 2d 498, 502.)
It was agreed in the stipulation dated July 8, 1968 that the judgment recovered by petitioner on December 29, 1966 “is an in personam judgment ” and that “ a copy of the affidavit of service be offered and received in evidence as petitioner’s Exhibit ‘ 8 ’.” That affidavit attests to the service of the summons and complaint upon Sports on November 22,1966, pursuant to section 306 of the Business Corporation Law (see also recitals in default judgment, petitioners’ Ex. 3). Thus this court acquired in personam jurisdiction over this defendant and not merely quasi in rem jurisdiction, in which case the judgment could be collectible solely from the debt levied upon prior to the entry of judgment. (McCarthy v. Culkin, 254 N. Y. 328, 331; *788 De Camillis v. De Camillis, 26 A D 2d 817, affd., 19 N Y 2d 880.)
It is clear from the evidence as now in the record that the Sheriff made a levy on March 27, 1968 under the execution dated March 11,1968 to enforce the final judgment for $30,088.49 docketed on December 29, 1966 on the same monthly percentage rentals owed by respondent from November 1, 1966 through March 1,1968 upon which he levied on November 22, 1966, pursuant to the order of attachment dated November 10,1966 — less than two months prior to the entry of judgment, a transcript of which was docketed in the office of the Clerk of Queens County on February 29,1968.
This attachment merged in the execution to enforce the judgment. In Castriotis v. Guaranty Trust Co. (229 N. Y. 74, 79) our Court of Appeals held that although “ an attachment merges in the execution, yet * * * the warrant of attachment is not annulled until the judgment is paid. It remains alive and in force so that it may take property or keep alive the lien on the property.” In Appleton v. National Park Bank (122 Misc. 248, affd. 211 App. Div. 708, affd. 241 N. Y. 561), Mr. Justice Pnoskauer stated (p. 249) in Special Term that the opinion in Gastriotis “ points to the conclusion that issuance of a general execution merges the warrant of attachment in the sense that no further levy can be made thereunder, but does not destroy the lien established by prior levy.” (See 11 Carmody-Wait 2d, New York Practice, § 76:185.)
Prejudgment sequestration orders in matrimonial actions in which the practice has been held ‘ ‘ assimilated to attachment proceedings as being similar in nature ” (Barton v. Barton, 258 App. Div. 44, 45; Matthews v. Matthews, 240 N. Y. 28, 35) likewise survive the entry of judgment in plaintiff’s favor. (Mazer v. Mazer, 276 App. Div. 733, 736-737, mod. on other grounds, 301 N. Y. 774.) The Appellate Division of the First Department aptly stated in Mazer (pp. 736-737): “ No case has been brought to our attention specifically deciding that a sequestration order obtained before judgment becomes a nullity with the entry of judgment. To so hold would reward an absconding husband rather than subject him to liability for disregarding orders of the court for the support and maintenance of wife and child.” ,(See also, Tuitt v. Tuitt, 36 Misc 2d 418, 421.)
By the attachment here merged in the property execution, the rent already due from respondent to his landlord Sports, at the time of the attachment levy on November 22, 1966, and the ¿monthly installments of rent thereafter accruing under the November 10,1964, sublease became subject, according to CPLR 6202, to the attachment as a debt1 ‘ against which a money judg *789 ment may be enforced as provided in section 5201 ”, which permits enforcement of a money judgment “ against any debt, which is past due or which is yet to become due, certainly or upon demand of the judgment debtor ”, Although I agree with the reasoning of the Appellate Term of the First Department in Glassman v. Hyder (52 Misc 2d 618) and the opinion of Mr. Justice Steueb in dissent to the Per Curiam of the Appellate Division, First Department, reversing the determination of the Appellate Term, the instant case falls squarely within the ambit of the majority’s holding that only when no rent is due and owing by the garnishee-tenant at the time that an order of attachment is served upon him, purporting to levy upon rents under a long-term lease, is such levy ineffective. (28 A D 2d 974.)
In Glassman the Sheriff of the City of New York served on December 21,1965 a levy under an order of attachment upon the defendants’ tenant, the Fireman’s Fund Insurance Company. This tenant had paid the January rent due under its 20-year lease with the defendants on January 3, 1966, 13 days after the service of the attachment order. The Civil Court of the City of New York vacated the order of attachment. (51 Misc 2d 535, 536.) The stated grounds for this determination were that “ the garnishee owed no rent to the defendants [on Dec. 21,1965 when the levy was made] since the rent for December, 1965 was paid on December 3,1965 * * * [and the Jan. 1966 rent was not yet due and therefore] the levy [was] not valid since at the time of the levy there was no debt, money or property right actually in existence to which the warrant could attach ’ ’. The Appellate Term (p„ 619) unanimously reversed, stating that: ‘1 Prospective earnings and other future accruing income are subject to an order of attachment, and a levy thereunder operates as a continuing levy until an amount sufficient to satisfy plaintiff’s demand has been accumulated. The rentals accruing under the long-term lease between defendants and the tenant served with the order of attachment were equally subject to levy thereunder, although no rent was yet due when the levy was made.” The Appellate Division reinstated the order of the Civil Court on the ground: “ The order of attachment, purporting to levy upon rents owing under a long-term written lease, was served at a time when no rents were due and owing to the defendants under the lease. * * * Eents not yet due are not attachable as debts to become due ‘ certainly or upon demand s. * * * The levy is ineffective because 1 at the time of service ’, the lessee did not 1 owe[s] a debt to the defendant ’ ”. (28 A D 2d 974.)
*790 In the case at bar, however, respondent had not paid the rent that became due Sports on November 1, 1966, when the levy under the order of attachment was made on November 22, 1966. Consequently, that levy was effective even under the Per Curiam of the Appellate Division in Classman as a continuing levy until an amount sufficient to satisfy petitioner’s demand was accumulated. Justice .'Stbubb’s observations (p. 975), however, accurately reflect the legislative intent in enacting CPLB 6202, 5201 and 6214 (subd. [b]). After noting that “ an insurer’s promise to defend and pay a claim against the insured is an attachable debt (Seider v. Roth, 17 N Y 2d 111) though there are countless contingencies which might defeat the insured’s right to enforce the obligation ” the dissent concluded: “ And in addition there is positive evidence that the Legislature regarded rent reserved in a lease as a debt certainly to become due. CPLB 6214 (subd. [b]) defines the effect of a levy. Included are ‘ all debts * * * then due and thereafter coming due to the defendant, shall be subject to the levy. ’ The effect of the majority holding would be that these words would mean that if an instalment of rent was past due when the levy was made, it was attached, and all subsequent instalments were likewise attached as they became due. It hardly seems reasonable to suppose that the Legislature intended to subject future instalments to the levy only in the event that there was an instalment of rent actually due at the moment the Sheriff served the process on the tenant. Rather, it would seem that, barring extraordinary instances, rent to become due in the usual course is a debt certainly to become due.” (Emphasis supplied.)
The delivery of the order of attachment to the Sheriff in the instant case afforded the petitioner rights superior to those of any transferee of the debt, except (1) one who took the debt ‘ ‘ before it was levied upon for fair consideration or without knowledge of the order of attachment ” or (2) who took the debt “ for fair consideration after it was levied upon without knowledge of the levy while it was not in the possession of the sheriff. ’ ’ (CPLR 6203; see Wachtell, New York Practice under CPLR [2d ed., 1966], pp. 187-188.) Intervening petitioner failed to adduce probative evidence of ‘1 fair consideration ’ ’ for the claimed assignment of the sublease or debt, consisting of the percentage rents the respondent was obligated to pay thereunder, or that this intervening petitioner or its subsidiary Econo had no knowledge of the order of attachment before the levy pursuant thereto or that either of them lacked knowledge after the debt was levied upon while not in the ¡Sheriff’s possession. Nor was there competent proof of when, if at all, notice of the *791 claimed assignment was given to the garnishee, respondent Abbruzzese.
Sports apparently owned all of the issued and outstanding capital stock of Econo, to which it purportedly assigned its interest in the sublease with respondent, dated November 10, 1964, by meaps of the document dated December 12, 1966 executed by the same persons for both assignor and assignee. According to the opposing affidavit of the president of the intervening petitioner B.A.I. Inc., sworn to on April 3, 1967, it entered into an agreement with Sports for the acquisition, inter alia, of all of the capital stock of Econo, on December 9, 1966; that Sports transferred these shares to said intervening petitioner by a stock assignment dated December 13, 1966 and that ‘ ‘ the effective date of said Agreement and assignment was December 1, 1966. ” As of the foregoing dates, of course, petitioner’s action had already been commence.d and the rent due and to become due from respondent to its sublandlord, Sports, had previously been levied upon by the service on respondent in this State of a copy of the order of attachment. Accordingly, .Sports’ assignment of the rents was subject to the rights thereto of its creditor, the petitioner herein.
Assuming, however, that, as now contended by the intervening petitioner, it acquired rights under the assignment in evidence dated December 12, 1966 effective as of October 13,1966, rather than by an assignment dated December 13, 1966 effective as of December 1, 1966 as claimed in the opposing affidavit of its president, the same result follows. While parties to the assignment could agree inter se that it take effect as of a date earlier .than that on which it was executed, such a provision cannot affect the rights already acquired by petitioner as the attaching creditor of the assignor. In Schaeffer Brewing Co. v. Amsterdam Tavern, (171 Misc. 352, cited with approval in Matter of City of New York v. Bedford Bar & Grill, 2 N Y 2d 429, 432), Mr. Justice Bergaw, now an Associate Judge of the Court of Appeals, held (p. 353) that an “ assignment of a claim not in existence is valid and enforcible in equity between assignor and assignee. (Pers. Prop. Law, § 41.) It cannot operate to affect adversely the interests of creditors.”
Moreover, if the assignment were to be retroactive as of October 13, 1966, the writing effecting that result between the parties thereto did not come into being until it was executed by the parties thereto on December 12,1966, a date subsequent both to the commencement of petitioner’s action against the assignor, .Sports, and the levy upon the debt consisting of the November, 1966 rent then owed by respondent and the rent he was obligated *792 to pay thereafter in accordance with the sublease with Sports dated November 10, 1964 Inasmuch as that sublease still had more than 3 years left of its 5-year and 21-day term on October 13, 1966, as of which date the assignment was allegedly to be effective, such assignment had to be in writing on that date (General Obligations Law, § 5-703) and duly recorded. (Real Property Law, §§ 240, 291.) The intervening petitioner adduced no evidence to that effect either as of October 13,1966 or November 22, 1966, when the Sheriff made the attachment levy. The assignment, therefore, could not and did not affect the rights of petitioner as attaching creditor of the assignor acquired prior to the date of its execution on December 12, 1966. In summary a ‘ ‘ memorandum does not retroact so as to affect third persons. ’ ’ (Emery v. Boston Term. Co., 178 Mass. 172, 183, Holmes, Ch. J.)
It follows from all of the foregoing that petitioner is entitled to judgment directing the Sheriff of the City of New York, Queens County Division, to release, turn over and pay to petitioner, subject to the Sheriff’s lawful fees, the $7,591.35 presently in his possession and control, pursuant to the satisfied property execution into which the levy under the attachment order merged.
This memorandum will stand as the decision of the court without formal findings. Settle judgment in accordance on five days ’ notice to the attorney for the intervening petitioner and to Joseph P. Brennan, Esq., Under Sheriff, in charge of Queens County Division of the Sheriff of the City of New York.