HARRY THOENS, Doing Business under the Name of HARRY THOENS Co., Respondent, v. J. A. KENNEDY REALTY CORP., Appellant.

First Department, December 18, 1951.

*J. Howard Carter* of counsel (*Stuart N. Updike* and *James E. Denning* with him on the brief; *Townley, Updike & Carter*, attorneys), for appellant.

*Monroe Goldwater* of counsel (*Milton Small* and *Robert Conrad* with him on the brief; *Goldwater & Flynn*, attorneys), for respondent.

DORE, J. P. Plaintiff, conducting a real estate brokerage business, sues defendant, lessee of improved real property in Jamaica, Long Island, N. Y., for brokerage commissions claimed to be due plaintiff from defendant because plaintiff at defendant's request procured an oral meeting of the minds of the parties involved on all essential terms of a proposed sublease of the property and thereafter defendant arbitrarily refused to continue with the transaction. After trial before the court and a jury, defendant appeals from judgment in plaintiff's favor entered on the jury's verdict for $25,000.

Defendant did not own or occupy any part of the premises, which were occupied by owners of commercial establishments and stores, defendant's sublessees, paying rent to defendant as master lessee. Two individuals, one Eva Gold and one Joseph Kaiser, were the fee owners of the property. Defendant's lease of the Jamaica properties was by its terms to end August 31, 1951; but it contained a lessee's renewal option that could extend it to August, 1971. Defendant had the right to sublease in whole or in part and the property was subject to a $250,000 first mortgage containing a prepayment clause and owned by the Emigrant Industrial Savings Bank.

In the fall of 1944, one Strumpf, employed by plaintiff (and interested to the extent of 50% in any commissions plaintiff would get), called on defendant's then president, J. A. Kennedy, who died before this action was commenced. Prior to meeting Kennedy, Strumpf had discussed with Abraham & Strauss (hereinafter " A&S "), a Brooklyn department store, the prospect of opening a department store in Jamaica; in September, 1944, Strumpf had visited the properties in question with an officer of A&S and interested A&S in securing a sublease thereof. Thereafter Strumpf proposed to defendant a sublease of the

property to A&S for a term extending with renewals at A&S's option to A. D. 2021, A&S to have the right to demolish the existing buildings on the property and erect a new building for its own business at cost to it of not less than $500,000, A&S to have a three-year cancellation clause of the proposed sublease (that by its terms at A&S's option could extend for seventy-five years).

This real property was not listed with plaintiff for lease at any particular price, although there is evidence on which the jury could find that plaintiff was employed as broker.

Plaintiff contends that on two different occasions, viz., first on June 28, 1945, and, secondly, on February 7, 1946, defendant through its president J. Arthur Kennedy orally agreed with A&S on all essential terms of the proposed sublease, but after such alleged meetings of the minds, defendant arbitrarily refused to continue negotiations and thereby prevented plaintiff from earning the commissions that it would have earned (by agreement from A&S) if the transaction had been closed. Plaintiff also contends that the February 7, 1946, oral agreement was " memoralized " in the form of a written memorandum, a letter from A&S to defendant dated April 11, 1946. This letter, covering seventeen pages of the printed record and characterized in its terms as " an offer ", was signed by A&S but concededly was never signed by defendant. For recovery, therefore, plaintiff relies on an *oral,* not a written agreement.

Recovery was had against defendant, although on June 28, 1945 (Exhibit A annexed to plaintiff's bill of particulars admitted as plaintiff's Exhibit 2), plaintiff expressly agreed with defendant in writing that plaintiff " shall not receive any commissions from J. A. Kennedy Realty Corp. [defendant] for original lease or from any renewals." A&S agreed to pay the commission, but defendant has been held on the theory that it prevented plaintiff from earning a commission from A&S.

With regard to the claimed oral agreement of June 28, 1945, plaintiff in its case moved to strike from paragraph tenth of its complaint the last sentence thereof, viz., " Said terms were satisfactory to the owner in so far as they affected the main lease." At the close of the whole case and after one Edwards, attorney for both fee owners had testified, plaintiff further moved to strike from article thirteenth of its complaint (relating to the claimed oral agreement of February 7, 1946) the last sentence thereof, viz.: " Said terms, in so far as they affected the main lease, were satisfactory to the owners." By

these amendments, plaintiff apparently withdrew as an issue in the case, the previously claimed approval of the transaction though on appeal plaintiff claims the evidence shows such approval. These amendments, however, left in the complaint an allegation that there were lengthy negotiations to secure the fee owners' consent "to modifications and extensions of the main lease *required** for compliance with the terms of the proposed sublease between the defendant and the prospective tenant." As thus amended, plaintiff by its pleading alleges the consent of the fee owners was *required* but there is no allegation remaining that it was *obtained*.

Defendant contends that there never was a meeting of the minds of all the necessary parties on all the terms essential to the proposed sublease; that in its charge the court committed numerous serious and prejudicial errors; and that the judgment appealed from should be reversed and the complaint dismissed.

The classic statement of the rule as to the right of a broker to recover commissions is found in *Sibbald* v. *Bethlehem Iron Co.* (83 N. Y. 378, 384). It was held that a broker is never entitled to commissions for unsuccessful efforts; that the risk of failure is wholly his though he expend much time, effort and money, yet if he fails to effectuate an agreement or accomplish a bargain, or his authority is fairly terminated in good faith he gains no right to a commission. The case makes one very important limitation in that rule, viz., that if the employer capriciously changes his mind after a purchaser ready and willing and consenting to the prescribed terms is produced, the broker does not lose his commissions. The court also held that if the broker gets a reasonable opportunity to perform (pp. 384–385): "the right of the principal to terminate his authority is absolute and unrestricted, except only that he may not do it in bad faith, and as a mere device to escape the payment of the broker's commissions. * * * But if the latter [the principal] acts in good faith, not seeking to escape the payment of commissions, but moved fairly by a view of his own interest; he has the absolute right before a bargain is made while the negotiations remain unsuccessful, before commissions are earned, to revoke the broker's authority, and the latter cannot thereafter claim compensation for a sale made by the principal, even though it be to a customer with whom the broker unsuccessfully negotiated, and even though, to some

---

* Wherever used herein, italics supplied.

extent, the seller might justly be said to have availed himself of the fruits of the broker's labor." No such latter claim is here made, but plaintiff contends that after the alleged oral meeting of the minds of two of the parties, viz., defendant and A&S, on all essential terms, defendant arbitrarily refused to continue negotiations with the fee owners because Kennedy, its president, wanted more money from the sublessee.

Under that rule, bad faith may not be established on a mere showing of an effort by the owner to get more for his property before the bargain is made, i.e., before definitive meeting of the minds of all necessary parties on all essential terms. Assuming there is a charge of bad faith in this case, there was no proof that defendant broke off negotiations in order surreptitiously to effect a sublease with the same or some other subtenant to defeat the broker's claim for commissions by acting in bad faith, alone or with another broker, or concluding the transaction *aliunde*.

On this record, certainly so far as the consent of the fee owners is concerned plaintiff failed to establish the alleged oral meeting of the minds of all the essential parties on all the essential terms; and on this ground the judgment appealed from must be reversed and the complaint dismissed. In cases in which a broker had a jury verdict, this court and the Court of Appeals have reversed the judgment in the broker's favor and dismissed the complaint on similar grounds. Thus, in *Stern* v. *Bristol Corp.* (273 App. Div. 371), the broker sued for commissions claimed to be due for procuring a purchaser of corporate stock which the individual defendants owned. After trial before the court and a jury, judgment was entered in plaintiff's favor for $18,497.66. This court reversed and dismissed the complaint, specifically holding, *inter alia,* that an indispensable term of the contract, viz., the date for fixing the financial status of the corporation for the purpose of the transfer had not been agreed upon. The Court of Appeals affirmed (298 N. Y. 766). In *Thompson & Co.* v. *New Madison Square Garden Corp.* (225 App. Div. 521, 523–524), this court reversed a judgment entered on a jury's verdict in favor of a real estate broker for commissions and dismissed the complaint on the ground that it was necessary for plaintiff to show consent to the sale by the directors of the defendant corporation and plaintiff failed to show such consent.

In the case before us, plaintiff failed to get the approval of the fee owners as to several essential business terms of the proposed extended lease. These were not mere nonessential

details usually left to lawyers (see *Mengel* v. *Lawrence,* 276 App. Div. 180), but concerned matters of substantial importance in connection with this long-term lease. There was no sufficient proof of any assumption by the defendant of the broker's obligation to obtain the fee owners' approval of these terms.

In any event, serious and prejudicial errors in the court's charge require reversal. In the principal charge, the trial court presented to the jury, as the main issue to be determined, the question whether on June 28, 1945, or February 7, 1946, plaintiff, as it claimed, had established to the jury's satisfaction that the two parties, viz., A&S and defendant, had come to a meeting of the minds on all the essential terms of the sublease. The court repeatedly referred to the " two concerns ", " the two sides " whose agreement was essential before there could be a meeting of the minds. This was basically erroneous since in fact, under the complaint, and in the contemplation of the parties, there was also necessary consent and approval on all essential terms by the two separate fee owners of the property, Mrs. Gold and Mr. Kaiser. The transaction involved a sublease from defendant to A&S extending with options to A. D. 2021; defendant, under its lease, even with the exercise of its option, could not give any sublease beyond 1971. The proposed sublease also concededly involved the right of the sublessee, A&S, to demolish the existing buildings on the property; these valuable improvements were not owned by defendant Kennedy and, for their demolition, consent of the two separate fee owners was also necessarily required. Indeed plaintiff's witness Strumpf admitted that he knew " that before any deal could be consummated, the consent of the fee owners, the owners of that property, would have to be obtained ", and that he also knew the plans called for demolition and defendant had no right to give anybody authority to demolish the buildings. Accordingly, before any effective agreement of the kind here proposed could be made, a meeting of the minds not of two but of four separate parties was necessary: (1) A&S, the proposed sublessee, (2) defendant, holder of the master lease, (3) Mrs. Gold and (4) Mr. Kaiser, the two individual owners of the fee. This basic error in the main charge was also repeated in the second charge.

Further, both in the main and subsequent charge, the court left it to the jury to determine as a question of fact what terms were essential for the claimed oral agreement. This was error. It was for the court to instruct the jury what the basic minimum

of essential terms was. A number of terms clearly were essential as a matter of law. One such was the requirement insisted on by the fee owners for deposit by the proposed sublessee of cash equivalent to three or five years' rent — a very substantial sum of money — to protect the owners in connection with the proposed sublessee's right to demolish their buildings. In addition, there were, *inter alia,* such matters as provisions with respect to mortgaging any new building, the cancellation clause and condemnation clause. The cancellation clause was an especially important matter for agreement with the fee owners, in view of the permission to A&S to demolish the building.

The court also erroneously left to the jury to determine " whether the owners [that is the fee owners] consent was necessary to effect this transaction between Kennedy and Abraham & Straus ". As indicated above, the proposed transaction could not be made without the fee owners' consent. In its brief before this court, plaintiff admits that " it was obvious at the very outset that the fee owners' approval was required."

Though defendant did not formally except to the main charge as given, basic issues were either excepted to in the second charge or are presented by requests to charge denied with exceptions. In any event the main charge as well as the supplementary charge (given when the jury had returned after the attorneys had taken exceptions in the jury's absence) were basically erroneous and presented the case to the jury on fundamentally wrong theories; and in such case such errors should be considered even without formal or specific exception. The nature of the errors lends color to the view that the complaint should be dismissed; the reason on account of which they were made is really that there was no issue of fact warranting submission of the case to the jury.

On the facts disclosed, consent by the fee owners was necessary. As the evidence showed that the fee owners had not consented, plaintiff at trial withdrew that part of its pleading alleging such consent. No meeting of all the required minds on all the essential terms had been reached. The trial court should have directed a verdict in defendant's favor.

The judgment appealed from should be reversed, with costs in defendant's favor, and the complaint dismissed, with costs.

Cohn, J. (concurring in result). I vote to reverse and dismiss the complaint on the ground that there was no meeting of the minds of all the necessary parties on all the necessary terms essential to the proposed sublease.

Shientag, J. (dissenting in part). I believe that the interests of justice would be best served by ordering a new trial to give plaintiff, who has labored long and arduously to earn his commission, the opportunity of proving his right to recover damages, because of the alleged wrongful conduct of defendant, in preventing plaintiff from obtaining the necessary consent and approval of the owners of the fee, which but for defendant's alleged arbitrary and wrongful acts would have been had. I therefore vote for reversal and for a new trial rather than for the dismissal of the complaint.

Callahan and Van Voorhis, JJ., concur with Dore, J. P.; Cohn, J., concurs in result in an opinion; Shientag, J., dissents in part in an opinion.

Judgment reversed, with costs to the appellant, and the complaint dismissed, with costs. Settle order on notice.