Isidor Wasservooel, Spec. Ref.
Plaintiffs, licensed real estate brokers, seek to recover approximately $26,000 as damages from defendants because of an alleged conspiracy on the part of the latter which wrongfully and unlawfully prevented plaintiffs from earning a brokerage commission in connection with a lease for office space in premises 488 Madison Avenue, New York City.
Plaintiffs allege that on or about December 3, 1948, they were employed on a commission basis by 488 Madison Avenue, Inc., the owner of the premises here involved (hereinafter referred to as the owner), to lease the unrented space in a then proposed office building to be erected on the site now known as 488 Madison, Avenue. Plaintiffs further allege that negotiations for *588 a lease for office space had progressed to such a point between them and the defendant Esquire, Inc., a prospective tenant (hereinafter referred to as the lessee), that had it not been for a conspiracy between the defendants to terminate these negotiations with plaintiffs, they would have consummated the transaction and then would have been entitled to a leasing commission. Plaintiffs claim to have been damaged in a sum equal to the commission paid by the owner to the defendant broker, John W. G-albreath & Co., Inc., after this broker had agreed to indemnify the owner and the lessee against the claims for commissions asserted by plaintiffs. It is plaintiffs’ contention that they, rather than the defendant broker, were the procuring cause of the lease ultimately entered into by the lessee with the owner.
It is significant that plaintiffs’ bill of particulars, as well as the proof adduced upon the trial of this action, clearly shows that plaintiffs did not have an exclusive agency with respect to leasing space in the then proposed new office building or in any part thereof. The record establishes that plaintiffs were on the same “employment” basis as all other licensed real estate brokers in the city of New York to whom the owner impliedly agreed to pay commissions if they procured tenants who signed leases. Likewise, it is to be noted that plaintiffs do not contend that they actually earned a commission, but merely assert that they were prevented from so doing as a result of the purported conspiracy. Such assertion is without merit.
Nothing in the record warrants the conclusion that defendants, or either of them, unlawfully conspired to deprive plaintiffs of their commissions. The classic statement of the rule with respect to the right of a broker to recover commissions is set forth in Sibbald v. Bethlehem Iron Co. (83 N. Y. 378, 384-385, 390-391; see, also, Thoens v. Kennedy Realty Corp., 279 App. Div. 216, 220-221, affd. 304 N. Y. 753). The Court of Appeals in the cited cases has held that regardless of the amount of time, effort, and money expended by a broker, he is never entitled to commissions for unsuccessful efforts. If he fails to execute an agreement, consummate a bargain, or his authority is fully terminated in good faith, he obtains no right to a commission for services rendered. The court also held (supra) that if a broker had a reasonable opportunity within which to perform, “ the right of the principal to terminate his authority is absolute and unrestricted, except only that he may not do it in bad faith, and as a mere device to escape the pay-
T *589 ment of the broker’s commissions * * * the latter cannot thereafter claim compensation for a sale made by the principal, even though it be to a customer with whom the broker unsuccessfully negotiated, and even though, to some extent, the seller might justly be said to have availed himself of the fruits of the broker’s labor.”
The cited cases make one very important limitation to the foregoing rule, viz., “ if the employer capriciously changes his mind after a purchaser ready and willing and consenting to the prescribed terms is produced, the broker does not [thereafter] lose his commissions ” (Thoens v. Kennedy Realty Corp., supra, p. 220). In the instant action, however, no proof has been adduced by plaintiffs which bring them within this stated limitation. There is nothing to substantiate plaintiffs’ claim that they would have become entitled to a commission had it not been that the defendant broker “interfered” and was recognized by the owner as the procuring cause of the lease. Such claim is based merely on speculation and conjecture. There was nothing to prevent any other broker in the city of New York from approaching the lessee and consummating the transaction for a lease and thus earn a fee. In effect, all that plaintiffs did was to bring the property to the attention of the ultimate lessee. The fact that a broker may have been the first to do so, or that he may have initiated negotiations, does not give him a right to a commission, particularly where, as here, no exclusive agency is claimed (Newberry & Co. v. Warneke & Co., 267 App. Div. 418, 420-421, affd. 293 N. Y. 698; Sibbald v. Bethlehem Iron Co., 83 N. Y. 378, supra).
Despite the fact that plaintiffs claim to have been the procuring cause of the lease here involved, the credible testimony clearly shows that they never discussed with the lessee any particular space or floor in 488 Madison Avenue or the construction of any special facilities which were required by the lessee, such as an auditorium. Likewise, plaintiffs did not negotiate with either the lessee or the owner concerning the amount of rent to be fixed for the proposed office space, other . than some incidental and inconsequential reference thereto. Thus plaintiffs, in effect, are claiming that even though they were engaged in a nonexclusive, competitive undertaking, they secured proprietary rights in a prospective tenant merely by internsting such potential lessee in a particular building. In substance, therefore, plaintiffs’ claim is predicated upon their belief that an owner and lessee are barred from discussing or negotiating a lease through another broker once the lessee has *590 indicated an interest in a building brought to its attention by plaintiffs. Without ever having discussed any of the basic and material details upon which the parties would reasonably have had to agree before a lease could be executed, as above noted, plaintiffs’ proof falls far short of establishing that they were the procuring cause of the lease subsequently entered into between the lessee and the owner.
Contrary to plaintiffs ’ contention, there is nothing in the law or in good business ethics that prevents brokers from attempting to persuade different officers of a corporation to select them as their representative to conduct leasing negotiations in behalf of such corporation. There was no duty, therefore, on the part of either the owner or the lessee to disclose to plaintiffs or advise them of the persons with whom they were conducting such activities. Plaintiffs and the defendant broker were competitors in the transaction here involved. Each of them probably sought to bring much influence to bear in their favor upon the lessee. To this extent the defendant broker unquestionably “ interfered ” with plaintiffs’ attempts to negotiate a lease. Such interference by a business competitor, however, creates no cause of action. The things the law looks for and seeks to redress when found are fraud, deceit, or false charges made against a competitor. These elements are all lacking here (Union Car Adv. Co. v. Collier, 263 N. Y. 386, 400).
The original complaint and bill of particulars show that the owner was an important party to the alleged conspiracy. At the commencement of the trial, however, plaintiffs amended the complaint by striking therefrom the owner as a party defendant. It is fundamental that one cannot be charged with a conspiracy to breach his own contract. Thus, if the owner, as alleged in the complaint, employed plaintiffs, even an actual conspiracy is not actionable. Assuming, arguendo, that plaintiffs were the procuring cause of the lease, they would then, under the stated facts in the complaint, have an action sounding in contract against the owner. In the instant action, they must now prove damages as a result of the actions of the lessee and the broker. This they have failed to do. , '
Plaintiffs rely principally upon two cases, to wit, Kevicshy v. Lorber (290 N. Y. 297), and Hornstein v. Podwitz (254 N. Y. 443) in support of their claimed right to the leasing commissions. Both cases are readily distinguishable from the biistant action inasmuch as the court in the cited cases found that plaintiffs therein had fully performed and would have received commissions but for interference with their completed contract. In the case at bar, the alleged conspiratorial acts occurred on *591 April 21 or 22, 1949. Until such time, however, plaintiffs, unlike those in the cited cases, had not fully performed the duties on their part to be performed. In addition to what has already been discussed herein, the record further shows that on January 25, 1949, plaintiffs were advised by the lessee that it was not interested in moving its office from its then location. Thereafter, and until the dates of the alleged conspiracy, plaintiffs did little, if anything, to actually carry on and further the negotiations for the space which was ultimately occupied by the lessee.
Upon the evidence before me, I hold that neither of the defendants conspired with the other or anyone else to unlawfully deprive plaintiffs or either of them of a leasing commission. I further hold that upon execution of the lease by the owner and the lessee on May 18, 1949, the details of which were negotiated and consummated by one Peter Ruffin of the defendant broker’s firm, the defendant broker was entitled to the leasing commissions here involved as the procuring cause of such lease.
All questions of fact are resolved in favor of defendants.
Judgment is rendered for defendants.