EGAN REAL ESTATE, INC., Respondent, *v.* LARRY MCGRAW et al., Appellants.

Fourth Department, January 18, 1973.

*Armani & Whelan* (*Kevin Whelan* of counsel), for Larry McGraw, appellant.

*Costello, Cooney & Fearon* (*Bruce B. Roswig* of counsel), for Shell Oil Company, appellant.

*Welch, Welch & Carr* (*Anthony P. Adorante* of counsel), for respondent.

WITMER, J. Defendants appeal from an order denying their motions for summary judgment dismissing the complaint. The action is by a real estate broker to recover damages in lieu of a commission on a lease on the theory that defendant McGraw and defendant Shell Oil Company (Shell) conspired to deprive plaintiff of its commission. Plaintiff alleges that its agent, Gardner, " consult[ed] with " McGraw, then informed Shell that

McGraw's property was available; that McGraw used information obtained from Gardner to negotiate a lease with Shell; and that thereafter McGraw and Shell conspired to deprive plaintiff of its commission on the lease. Upon affidavits and the transcript of an examination before trial, defendant McGraw moved for summary judgment dismissing the complaint. Shell informally joined in the motion and submitted affidavits in support of dismissal of the complaint as against it. No objection was made by plaintiff to the form of Shell's motion, the court ruled upon it as though it were formally made, and we shall do the same.

On these motions plaintiff is entitled to the benefit of every favorable inference which may be drawn from the pleadings, affidavits and examinations before trial; and we recognize that the presence of a genuine issue of fact will preclude summary judgment (CPLR 3212, subd. [b]). Accepting at full value the evidence in plaintiff's favor, the moving papers show that plaintiff's agent, Gardner, had three material series of conversations with defendant McGraw. He first approached McGraw in the fall of 1967, at which time McGraw asked plaintiff to find a tenant for a building on his property. At that time a lease to an oil company was not contemplated. In the late winter or early spring of 1968, Gardner proposed that McGraw enter into a joint venture with an adjoining land owner to develop the properties as a service station. McGraw declined to do so. Approximately 30 days later Gardner outlined a plan under which McGraw could move the building on his property and then enter into a land lease with an oil company. Gardner identified four oil companies, including Shell, as prospective lessees or purchasers. McGraw did not reach a conclusion on this plan and he and Gardner continued to discuss the possibilities. In October, 1968 Gardner first mentioned McGraw's property to a Shell representative in the course of a conversation over another transaction. Gardner related the approximate size and zoning of McGraw's property, but further details were not discussed because the Shell representative was interested in other matters. This brief conversation was the only contact between plaintiff and Shell with regard to the McGraw property prior to the termination of plaintiff's employment by McGraw.

Shortly after the conversations between McGraw and Gardner in the spring of 1968, without assistance from plaintiff, McGraw negotiated an option to lease his property to a third party. Gardner concedes that "nothing further was done by me (him) with regard to this property pending the outcome of [that]

option.'' In early 1969, after the option had terminated, Gardner called McGraw to ask for a sales price of his property which he could present to Shell. McGraw told Gardner that he was dealing directly with Shell. Gardner then made a call to Shell and verified that McGraw and Shell were negotiating directly.

More than a year later the negotiations between McGraw and Shell materialized in a lease executed in August, 1970. It is significant that Gardner admits that he assumed that Shell '' was not particularly interested in '' a lease and he told McGraw so, that he never presented to Shell any detail of a proposed transaction other than the size and zoning of McGraw's property, and that McGraw never gave Gardner a proposed asking price for a sale. Gardner also admits that he did not produce a lease between McGraw and Shell.

Although Gardner was confused in his testimony as to the dates of his conversations with McGraw and Shell, his affidavit executed on February 2, 1972 (after the examinations before trial) shows beyond dispute that Gardner discontinued his efforts pending the expiration of the option and that on his initial call thereafter McGraw terminated his employment.

Although this appeal reaches us on summary judgment motions and not on motions addressed to the pleadings, we are constrained to observe that the complaint is deficient as against both defendants. It is quite clear, as noted by the court in *North Shore Bottling Co.* v. *Schmidt & Sons* (22 N Y 2d 171, 179) that '' ' one does not have a cause of action against another contracting party for conspiracy to breach the agreement between them '. (*Bereswill* v. *Yablon,* 6 N Y 2d 301, 306; see, also, *Warner Bros. Pictures* v. *Simon,* 15 N Y 2d 836, affg. 21 A D 2d 863; *Friedman* v. *Roseth Corp.,* 297 N. Y. 495; *Miller* v. *Vanderlip,* 285 N. Y. 116.) '' Where, however, a complaint contains allegations that a contracting party violated a legal duty extraneous to the contract, it may state a valid cause of action in tort. (*North Shore Bottling Co.* v. *Schmidt & Sons,* 22 N Y 2d 171, 179, *supra; Albermarle Theatre* v. *Bayberry Realty Corp.,* 27 A D 2d 172, 174–177.) In the instant case plaintiff has not alleged any fact to show that defendant McGraw violated a common-law duty extraneous to the contract; the allegations that McGraw negotiated directly with Shell, avoided and refused to deal with and through plaintiff and otherwise prevented plaintiff '' from being fully involved '' are encompassed within an action for breach of contract. Accordingly, plaintiff's remedy, if any, against defendant McGraw lies exclusively in an

action for breach of contract, the elements of which are not here alleged.

Because it is conceded that plaintiff had no agreement with defendant Shell, Shell has no obligation to pay a commission to plaintiff (*Lee* v. *Woodward*, 259 N. Y. 149; *Sieven* v. *Glazer*, 267 App. Div. 969, mot. for lv. to app. den. 292 N. Y. 726). A tort liability might exist upon allegations and evidence that Shell had knowledge of the existence of a contract between plaintiff and defendant McGraw, engaged in unprivileged conduct that was a substantial factor in inducing McGraw to breach his contract with plaintiff and acted with the intent to injure plaintiff. (*Keviczky* v. *Lorber*, 290 N. Y. 297; *Albemarle Theatre* v. *Bayberry Realty Corp.*, 27 A D 2d 172, 178; *Williams & Co.* v. *Collins Tuttle & Co.*, 6 A D 2d 302; see, generally, 2 NY PJI 831–842.) It is not enough that Shell reaped some advantage when McGraw withdrew from his contract with plaintiff, if that action was taken on McGraw's own initiative. Nor are the alleged events after the termination by McGraw of his contract with plaintiff material, because plaintiff must allege and prove wrongful acts by Shell to induce the breach. Plaintiff, of course, can have no cause of action against Shell for conspiring to induce a breach of contract or to interfere with contractual relations unless plaintiff has a cause of action against McGraw for a commission earned (*Blauner* v. *Katz*, 30 A D 2d 957; *Muldoon* v. *Silvestre*, 283 App. Div. 886).

That plaintiff brought the property to the lessee's attention or introduced the parties does not sustain an action for commissions (*Sibbald* v. *Bethlehem Iron Co.*, 83 N. Y. 378, 383; *Byrne, Bowman & Forshay* v. *488 Madison Ave.*, 11 Misc 2d 587, 589, affd. 286 App. Div. 826), nor does it satisfy the " stringent test " for an action in tort against the lessee, under which the broker must show that its efforts would have resulted in a lease except for the lessee's wrongful acts. (*Union Car Adv. Co.* v. *Collier*, 263 N. Y. 386, 401; *Owen A. Mandeville, Inc.* v. *Zah*, 38 A D 2d 730; *Altman* v. *Casale*, 25 A D 2d 877; *Williams & Co.* v. *Collins Tuttle & Co.*, 6 A D 2d 302, 307.) Plaintiff in the instant action does not allege that it was the procuring cause of the lease or that it had advanced negotiations between the parties to a point where a lease would have resulted except for the tortious interference by Shell. At most, it is alleged that " plaintiff did everything that it could do to continue to act as the real estate broker in the transaction * * * but was prevented from being fully involved by the acts of the defendants dealing between themselves ".

The conclusory allegations that Shell and McGraw "conspired" to deprive plaintiff of the commission on the transaction and that defendants "wrongfully" prevented plaintiff from receiving the commission do not supply the missing elements of a cause of action in tort. A civil conspiracy to commit an actionable wrong is not a cause of action by itself. (*Green* v. *Davies*, 182 N. Y. 499, 504; *Albemarle Theatre* v. *Bayberry Realty Corp.*, 27 A D 2d 172, 174, *supra*; *Cuker Ind.* v. *Crow Constr. Co.*, 6 A D 2d 415, 417.) Here, there is no factual allegation of acts which would show tortious interference, such as fraudulent misrepresentations, a design for kickbacks or other unlawful means or purposes (cf. *Keviczky* v. *Lorber*, 290 N. Y. 297; *Williams & Co.* v. *Collins Tuttle & Co.*, 6 A D 2d 302, *supra*). It is, of course, immaterial that plaintiff suggested to McGraw that he could move a building on his property, then lease his land to an oil company. Plaintiff had a nonexclusive oral listing of McGraw's property and it took its chances on the services it rendered. The classic statement of this rule is found in *Sibbald* v. *Bethlehem Iron Co.* (83 N. Y. 378, 383, *supra*). " that a broker is never entitled to commissions for unsuccessful efforts. The risk of failure is wholly his. The reward comes only with his success. That is the plain contract and contemplation of the parties. The broker may devote his time and labor, and expend his money with ever so much of devotion to the interests of his employer, and yet if he fails, if without effecting an agreement or accomplishing a bargain, he abandons the effort, or his authority is fairly and in good faith terminated, he gains no right to commissions. He loses the labor and effort which was staked upon success. And in such event it matters not that after his failure, and the termination of his agency, what he has done proves of use and benefit to the principal." (See, also, *Hoch Assoc.* v. *Western Newspaper Union*, 308 N. Y. 461, 463; *Thoens* v. *Kennedy Realty Corp.*, 279 App. Div. 216, 220–221, affd. 304 N. Y. 753; *Newberry & Co.* v. *Warnecke & Co.*, 267 App. Div. 418, 420–421, affd. 293 N. Y. 698; *Simonson* v. *First Nat. Bank of Rockville Centre*, 231 App. Div. 868; *Byrne Bowman & Forshay* v. *488 Madison Ave.*, 11 Misc 2d 587, affd. 286 App. Div. 826, *supra*.)

The papers submitted on the summary judgment motions confirm that plaintiff has misconstrued the elements necessary in an action to recover damages for loss of commissions. It is apparent from the affidavits and examinations before trial that no genuine issue of fact is presented. Ordinarily it will be for a jury to determine whether a lessor has acted in good faith in

terminating a broker's employment (*Douglas Real Estate* v. *Montgomery Ward,* 4 N Y 2d 33; *Priestly* v. *Buildmaster Housing Corp.,* 28 A D 2d 707; see, generally 2 NY PJI 933) and to determine whether the broker has advanced negotiations to the point where a contract between the lessor and the lessee would have resulted but for the tortious interference of the prospect (*Busher Co.* v. *Galbreath-Ruffin Realty Co.,* 22 A D 2d 879, affd. 15 N Y 2d 992; *Newberry & Co.* v. *Warnecke & Co.,* 267 App. Div. 418, 420–421, affd. 293 N. Y. 698, *supra*; *Williams & Co.* v. *Collins Tuttle & Co.,* 6 A D 2d 302, *supra*). Allowing plaintiff every favorable inference, it is nonetheless clear from the entire record that a jury could not reasonably find the necessary elements either of an action in contract against McGraw or an action in tort against Shell. Plaintiff having suspended its efforts in McGraw's behalf after McGraw without plaintiff's assistance optioned his property to a third party, a jury could not find that McGraw acted in bad faith in terminating plaintiff's nonexclusive employment. Nor could a jury find that plaintiff had, prior to the termination of its employment, advanced the negotiations between McGraw and Shell to the requisite stage, since plaintiff had not discussed with Shell any relevant detail of a sale or lease other than the size and zoning of McGraw's property, the transaction proceeded on a basis that plaintiff had presumed was not possible (cf. *Owen A. Mandeville, Inc.* v. *Zah,* 38 A D 2d 730, *supra*; *Altman* v. *Casale,* 25 A D 2d 877, *supra*) and plaintiff had not " generated a claim of circumstances which proximately led to the ultimate lease of the premises ", nor had it " brought the parties together and instigated a proper attitude toward the possible lease " (*Busher Co.* v. *Galbreath-Ruffin Realty Co.,* 22 A D 2d 879, affd. 15 N Y 2d 992, *supra*).

Plaintiff is in the position of one having " merely a wishful dream of commissions " (see *Williams & Co.* v. *Collins Tuttle & Co.,* 6 A D 2d 302, 308, *supra*). Assuming the facts presented by plaintiff, it is apparent that plaintiff, at the time of termination, was merely seeking to perform services which might, if successful, have entitled it to a commission and that McGraw did not wish and declined to accept such services.

Finally, we find no merit in plaintiff's contention that Shell is liable to it because of an indemnity clause in the lease, under which Shell agreed to hold McGraw harmless in the event a broker should prove that the lease was procured through its efforts. No such cause of action is alleged, and moreover no such cause of action exists in law (*French* v. *Vix,* 143 N. Y. 90;

*Snyder Plumbing & Heating Co. v. Purcell,* 9 A D 2d 505; 28 N. Y. Jur., Indemnity, § 26).

Accordingly, the order denying defendants' motions for summary judgment should be reversed and judgment should be entered dismissing the complaint as against both defendants.

DEL VECCHIO, J. P., MARSH, CARDAMONE and HENRY, JJ., concur.

Order unanimously reversed with costs, motions granted and complaint dismissed as to both defendants.