■ STANLEY L. GROSKIN, Appellant, v SEEDMAN MERCHANDISING GROUP, INC., et al., Respondents, and MARTINS, Additional Defendant-Respondent upon Cross Claim. — In an action to recover a real estate broker's commission, the plaintiff broker appeals, as limited by his brief, from so much of an order and judgment (one paper) of the Supreme Court, Nassau County (Levitt, J.), dated May 27, 1982, as granted the motion of defendant Federated Stores Realty, Inc., and the cross motions of defendants Conran's and Seedman Merchandising Group, Inc., for summary judgment, dismissing the complaint against them. Order and judgment modified by deleting from the first decretal paragraph thereof the provision granting the cross motion of defendant Seedman Merchandising Group, Inc., for summary judgment and substituting therefor a provision granting said cross motion as to plaintiff's second and third causes of action and denying it in all other respects and by deleting from the third decretal paragraph thereof the provision dismissing plaintiff's complaint against defendant Seedman Merchandising Group, Inc., and substituting therefor a provision dismissing the plaintiff's second and third causes of action asserted against said defendant. As so modified, order and judgment affirmed insofar as appealed from, without costs or disbursements. The uncontroverted facts of this action were set forth by Special Term essentially as follows: On December 12, 1977, plaintiff wrote an unsolicited letter to the President of Conran's, Michael Tyson, regarding possible suburban locations for a Conran's store. On January 4, 1978, plaintiff called the director of leasing at Riverside Square Shopping Center in New Jersey, owned by defendant Federated Stores Realty Co. (hereinafter Federated Realty), and learned that the only possible location at Riverside was the 50,000 square feet of space leased by Martins, a subsidiary of Seedman Merchandising Group, Inc. (hereinafter SMG). Plaintiff was informed that Martins was doing poorly at Riverside. When the plaintiff heard about the possibility of a takeover of the Martins' lease, on January 10, 1978 he telephoned George Seedman, the chairman of SMG, for whom he had acted as broker in the past. Seedman told plaintiff that he had not yet reached a decision as to Martins' future at Riverside but would do so within six months. Pursuant to Seedman's suggestion, plaintiff confirmed his conversation of January 10, 1978 in a letter, dated that same day and sent by registered mail, discussing Conran's interest in the location should Martins decide to sublease the premises and reciting plaintiff's understanding that Seedman would make a decision as to Martins' future at Riverside within six months. On January 26, 1978 Seedman wrote a reply letter to plaintiff acknowledging receipt of the January 10, 1978 letter. Seedman reiterated that he had no plans to turn over the location at that time but, stated that if his plans changed, he would contact plaintiff. In addition, Seedman wrote that if an agreement was reached between Conran's and Martins plaintiff would be recognized as the broker who introduced the prospect to him. On September 13, 1978, plaintiff set up a meeting between Tyson of Conran's, Seedman of SMG, and himself in his office

in Brooklyn to negotiate a sublease of the Martins' store by Conran's. Among the issues discussed at that meeting were the need to obtain Federated Realty's consent to such an arrangement between Conran's and Martins, reimbursement for leasehold improvements that Martins had made during its tenancy, and the rental terms, in particular, the portion of space that Conran's would sublease. Conran's was interested in leasing only 25,000 of the 50,000 square feet leased by Martins. In late November, 1978 Tyson and Seedman met again to negotiate but were unable to reach an agreement. The same outstanding issues remained. Plaintiff was not present at these negotiations but agrees that he was kept abreast of them by telephone calls from the parties and in turn made telephone calls in the hopes of furthering the negotiations. In December, 1978, after Conran's and Martins were unable to resolve their differences, Federated Realty, through a representative, entered the picture. Martins expressed an interest in terminating its lease with Federated Realty, which, in turn, expressed an interest in a potential lease arrangement with Conran's if Martins' lease was in fact terminated. Seedman was prepared to consider other options, such as opening a Times Square store on part of Martins' premises, if Federated Realty would not agree to reimburse for the leasehold improvements. (Such an arrangement would allegedly have been detrimental to Federated Realty's Riverside Square Shopping Center which housed high quality stores.) Ultimately, upon Federated Realty's consent to reimburse the sum of $300,000 to Martins for its leasehold improvements, a lease termination agreement was entered into on June 7, 1979 between Martins and Federated Realty. On June 21, 1979 a lease for 25,000 square feet of the Martins' store was entered into between Federated Realty and Conran's. Plaintiff admittedly did not engage in these negotiations but was kept informed through numerous telephone calls, primarily with Tyson of Conran's. Annexed to the lease of June 21, 1979, between Conran's and Federated Realty, was an agreement whereby the parties warranted and represented that they had no dealings with any agent or broker in connection with the leasing of the premises by Conran's. In addition, they acknowledged in a rider to the lease that plaintiff attended the meeting of September 13, 1978, regarding a possible takeover of Martins' lease by Conran's but that that lease failed to materialize. When Seedman refused to pay the commission plaintiff requested, plaintiff brought suit, alleging in his first cause of action that SMG had breached its agreement for commissions and in his second and third causes of action that all defendants caused the breach of the agreement between plaintiff and SMG and conspired to deprive plaintiff of his commission. Material issues of fact preclude summary judgment on the first cause of action. Whether the scope of the commission agreement between plaintiff and SMG extended to the subsequent takeover of Martins' space by Conran's by means of a lease with Federated Realty and the termination of SMG's lease with the latter, rather than by a sublease from SMG, and whether plaintiff's efforts procured that takeover, entitling him to a commission, are all issues of fact that must be resolved at a trial. Thus, Special Term erred in granting summary judgment on this first cause of action (*Sillman v Twentieth Century-Fox Film Corp.*, 3 NY2d 395). However, Special Term properly granted summary judgment to all defendants on the second and third causes of action. In order to defeat a motion for summary judgment it is incumbent upon the opponent to present evidentiary proof sufficient to raise a triable issue of fact (*Freedman v Chemical Constr. Corp.*, 43 NY2d 260). This plaintiff has failed to do with respect to the conspiracy and tortious interference claims. Even if it had, the second and third causes of action would still have to be dismissed against SMG for it is well settled that there can be no cause of action for

conspiracy by one party to a contract against another party to that same contract (see *Mastro Jewelry Corp. v St. Paul Fire & Mar. Ins. Co.,* 70 AD2d 854; *Egan Real Estate v McGraw,* 40 AD2d 299). We have considered plaintiff's other contentions on appeal and have found them to be without merit. Damiani, J. P., Titone, Lazer and Boyers, JJ., concur.