OPINION OF THE COURT
Bernadette T. Clark, J.
Before the court is a motion for summary judgment by Michael A. Fiore and the City of Utica (hereinafter referred to collectively as Utica defendants) dated June 12, 2014 and a cross motion for summary judgment by plaintiff John M. Holmes dated June 27, 2014 and a cross motion for summary judgment dated June 30, 2014 by Wyatt T. Holmes.
Facts
On December 7, 2010 at approximately 6:30 a.m., plaintiff was a passenger in a vehicle being operated by his brother, defendant Wyatt T. Holmes. The two were traveling along Oneida Street in the City of Utica towards the (former) intersection of Oneida and Genesee Streets. Defendant Wyatt T. Holmes stopped at the intersection of Oneida and Genesee Streets, on Oneida Street, for a red light. The light turned green and defendant Wyatt T. Holmes proceeded into the intersection. Defendant Wyatt T. Holmes was about halfway through all four lanes of Genesee Street when a snowplow, owned by the City of Utica and operated by defendant Michael A. Fiore, struck defendant Wyatt T. Holmes’ vehicle. Defendant Wyatt T. Holmes testified that he did not see the snowplow until after it made impact. Defendant Fiore testified he did not see defendant Wyatt T. Holmes’ car until the collision.
Defendant Fiore testified that his shift as an employee for the City of Utica went from 11:00 p.m. to 7:00 a.m. He also testified that at the time of the accident he had finished salting his specific route, known as “Victoria down,” and was returning to the garage. Defendant Fiore testified that, as part of his job, he was instructed to empty any remaining salt in the snowplow’s hopper to prevent corrosion to the hopper. When the collision occurred, defendant Fiore was emptying salt from the snowplow’s hopper onto Genesee Street. Defendant Fiore testi *174 fied that he had to pass under two sets of traffic lights just prior to the accident. At his deposition he could not remember if either the first or second traffic light was red or green when he passed through. The plaintiff’s vehicle apparently entered Genesee Street from its intersection with Oneida Street, which was to defendant Fiore’s right. As he passed the first traffic light, defendant Fiore testified that he looked to the left, and down State Street. He further testified that his view to the right was obscured by construction equipment, debris, materials and signs. There was also a pile of crusher stone and traffic signs in this area to the right. Defendant Fiore testified that he did not stop, but he slowed down to 10 to 15 miles per hour. Defendant Fiore stated that the debris obscured his view, and that he thought that there might be a car behind the crushed stone and signs. Therefore he slowed down, but he continued to proceed.
Defendant Fiore testified that as he passed under the second light, he was still going 10 to 15 miles per hour. He recalls that he looked to the right and saw nothing. However, he testified that the Holmes’ vehicle was already in front of him, partially in the southbound lane of Genesee Street when he struck it. He testified that his snowplow was in the left hand lane going northbound on Genesee Street. He could not recall how much time passed between when he first saw the plaintiff’s vehicle and the collision, but he did recall that the plaintiff’s vehicle only traveled a few feet between when he first saw it and the impact. Defendant Fiore testified that the driver’s side of the plow collided with the driver’s side rear of the plaintiff’s vehicle.
Defendant Wyatt T. Holmes testified that he came to a complete stop at the red light, while traveling roughly northbound on Oneida Street. Once the light turned green, he proceeded into the intersection. He testified that he did not see the snowplow prior to impact. As his car traveled through the intersection he felt an impact on the rear driver’s side of his car. He also testified that he did not see any flashing or rotating lights on the snowplow after the accident.
The intersection at which the accident occurred has now changed from Oneida Street diagonally crossing Genesee Street, to what is now a roundabout. Samuel Simon, a retired signal maintenance employee for the City of Utica, testified that at the time of the accident, if defendant Wyatt T. Holmes had a green light on Oneida Street, defendant Fiore would *175 have been subjected to two red lights before entering the intersection of Oneida and Genesee Streets.
Analysis
In deciding a summary judgment motion, the court must determine whether a real triable issue of fact exists as to a material element of the plaintiff’s claim. (Crage v Kissing Bridge Ski Area, 186 AD2d 987, 988 [4th Dept 1992].) Every inference most favorable to the plaintiff’s position should be awarded. (Egan Real Estate v McGraw, 40 AD2d 299, 301 [4th Dept 1973].) A movant for summary judgment must come forward with admissible evidence, which establishes that a cause of action has no merit. (Alvarez v Prospect Hosp., 68 NY2d 320, 323 [1986].) The defendant, as the moving party, has the burden of proving he is entitled to judgment as a matter of law. (Zuckerman v City of New York, 49 NY2d 557 [1980].) It is then upon the non-moving party to present an issue of fact to defeat the summary judgment motion. (Zuckerman, 49 NY2d at 562.)
The relevant statutory provision which is key to resolving the motions at bar is Vehicle and Traffic Law § 1103 (b), which states in pertinent part:
“Unless specifically made applicable, the provisions of this title, except the provisions of sections eleven hundred ninety-two through eleven hundred ninety-six of this chapter, shall not apply to persons, teams, motor vehicles, and other equipment while actually engaged in work on a highway nor shall the provisions of subsection (a) of section twelve hundred two apply to hazard vehicles while actually engaged in hazardous operation on or adjacent to a highway but shall apply to such persons and vehicles when traveling to or from such hazardous operation. The foregoing provisions of this subdivision shall not relieve any person, or team or any operator of a motor vehicle or other equipment while actually engaged in work on a highway from the duty to proceed at all times during all phases of such work with due regard for the safety of all persons nor shall the foregoing provisions protect such persons or teams or such operators of motor vehicles or other equipment from the consequences of their reckless disregard for the safety of others.”
The Court of Appeals in Riley v County of Broome (95 NY2d 455, 461 [2000]) interpreted section 1103 (b) as exempting *176 operators of municipal vehicles, such as snowplows, which are actively engaged in work on the highway from the “rules of the road,” including traffic control devices. (Riley v County of Broome, 95 NY2d at 461.) In 1954, the Committee that proposed the original version of the statute stated that the law was intended to exempt from the rules of the road snowplows that “remove the snow, sand the pavement and do similar work.” (Id. at 464.) The exemption turns on the nature of the work being performed, and not the nature of the vehicle in question. (Id.) Further, the Riley decision teaches that the standard of care to be employed by operators of vehicles engaged in work is that they may not act with reckless disregard for the safety of others. (Id. at 465-466.) This is the same standard applied to emergency vehicles. (Id. at 466; Saarinen v Kerr, 84 NY2d 494 [1994]; Vehicle and Traffic Law § 1104 [e].)
The Fourth Department has had occasion to analyze section 1103 (b) in the context of a snowplow accident. In Hofmann v Town of Ashford (60 AD3d 1498 [4th Dept 2009]), the Court held that the negligence standard, rather than the reckless disregard standard, applied to a plow which was not actively engaged in highway work when it struck the plaintiff at an intersection. In Hofmann, the plow truck had finished one route in town and was traveling over a county road to another route in town. The blades of the truck were raised and it was not sanding or salting the road. (Hofmann, 60 AD3d at 1499.) The Court reasoned that the plow driver was not actively engaged in work on the highway because (1) the plow truck driver was not driving on his plow route but instead was traveling from one part of his route to another by way of a county road he was not responsible to plow, and (2) he was driving with both plow blades raised and was not plowing or salting at the time of the accident. (Id. at 1499.)
Again, in Gawron v Town of Cheektowaga (117 AD3d 1410 [4th Dept 2014]), the Fourth Department examined a plow accident in the context of section 1103 (b). In Gawron, the Court determined a plow was actively engaged in work on a highway when it crossed over the middle line and hit an oncoming car while plowing water and debris off a seasonal road. (Gawron, 117 AD3d at 1410-1411.) The driver of the plow was a janitor who had plowing duties, but was not assigned to plow the road where the accident occurred. (Id.) The majority opinion held that the phrase “actually engaged in work on a highway” is not *177 to be interpreted as limited to assigned work, and that to interpret the statute as suggested by the dissent to include only assigned work would “improperly add[ ] language to the statute by qualifying the word ‘work.’ ” (Id. at 1412.) Further, in analyzing whether the plow driver was actually performing work, the Court noted that plowing water and debris is “work” and that it was being done within the scope of the operator’s duties. (Id.) Given that the plow driver was actually engaged in work, albeit unassigned, the Court imposed the reckless disregard standard. (Id. at 1413.)
In the case at bar, the competing motions for summary judgment turn in part on which standard of care to apply, reckless disregard, or mere negligence. The plaintiff contends that the Hofmann analysis is similar to the case at hand because in both instances the defendant was not performing work on his assigned route. The court finds this similarity, alone, not enough to grant plaintiff’s motion for summary judgment. The court interprets the ruling in Hofmann and its emphasis on the fact the plow was not on a town road but on a county road to indicate that the driver was plowing a road outside of the town’s plow truck’s jurisdiction. Additionally, the Hofmann Court specifically stated that the plow was not “sanding or salting” the road. Yet in the case at bar, defendant Fiore was salting the road. He was required to empty the salt in the plow’s hopper and was therefore performing work. Furthermore, he was not on a road outside of the jurisdiction, but was on another driver’s route. Thus, in the court’s view, Hofmann is not controlling.
However, the factual similarities to the Gawron case are undeniable. In both situations, the plows were performing the typical responsibilities of a plow, but both outside of their assigned work route. In the case at hand, the weather conditions at the time of the accident were either rain or freezing rain, and therefore the city trucks were salting. The Riley case instructs the court to consider the nature of the work being performed, and the Gawron majority explicitly states unassigned work is still work. Defendant Fiore’s plow truck was salting the road, a typical procedure for a plow, and therefore he was actively engaged in work within the scope of his duties on the highway, even if he was no longer operating on his “assigned” route.
Therefore, with respect to that part of plaintiff’s motion for summary judgment requesting the court apply the negligence *178 standard, as opposed to the reckless disregard for the safety of others standard, the motion is denied.
With respect to the Utica defendants’ motion for summary judgment, reckless disregard for the safety of others occurs when an actor “has intentionally done an act of an unreasonable character in disregard of a known or obvious risk that was so great as to make it highly probable that harm would follow” and has done so with conscious indifference to the outcome. (Saarinen v Kerr, 84 NY2d 494, 501 [1994], citing Prosser & Keeton, Torts § 34 at 213 [5th ed 1984].) The reckless disregard standard for work vehicles on the highway under section 1103 (b) is analyzed in the same fashion as emergency vehicles operating in an emergency. (Riley, 95 NY2d at 466; Saarinen, 84 NY2d at 501.) The “reckless disregard” test requires a showing of more than a “momentary judgment lapse.” (Saarinen at 502.)
In arguing that defendant Fiore’s actions were not reckless, the Utica defendants cite to Herod v Mele (62 AD3d 1269 [4th Dept 2009]). In Herod, the defendant officer’s police vehicle was traveling on wet roads, defendant did not activate his sirens, and he was speeding when a collision occurred. Despite this the Court held his actions did not rise to the required level of recklessness. (Herod, 62 AD3d at 1270.) The Court reasoned the police officer had the right-of-way in the intersection and there was no evidence of other traffic. {Id.) Furthermore, the Court justified the police officer’s actions because he was responding to a fight, which posed a risk of greater harm. {Id.)
Yet in this court’s view, the case at bar is distinguishable. Defendant Fiore does not recall whether he had the right-of-way in not one, but two separate traffic lights just prior to the accident. He did not see the Holmes’ vehicle, and his view was obstructed. Lastly, defendant Fiore has provided no rationale as to why his running of the red lights was justified.
Next, defendant cites two cases, McDonald v State of New York (176 Misc 2d 130 [Ct Cl 1998]) and Rockland Coaches, Inc. v Town of Clarkstown (49 AD3d 705 [2d Dept 2008]) in which complaints were dismissed because the drivers’ actions of the plows did not constitute reckless disregard. In both cases collisions occurred when the plows were attempting to make U-turns and did not see vehicles in the lane they were turning into. Yet these cases are distinguishable from the case at hand as well. McDonald and Rockland Coaches, Inc. display negligent actions or momentary lapses of judgment. The drivers *179 quickly looked, did not see traffic in the lane next to them, and attempted to make a U-turn, and made one bad decision. In the case at hand, defendant Fiore, traveling at a speed of 10 to 15 miles per hour, went through two intersections for which he does not remember if he had the right-of-way. This is distinctively different from genuinely believing there was no traffic in the other lane. The fact that defendant Fiore had an obstructed view and knew that there might have been a car behind the obstruction but still proceeded clearly indicates that there is a triable issue of fact as to whether he acted with reckless disregard.
The Utica defendants also cite the Fourth Department case of Nikolov v Town of Cheektowaga (96 AD3d 1372 [4th Dept 2012]) for further support wherein the Court found a lack of recklessness because a police officer slowed down to 15 miles per hour and carefully looked around an intersection prior to proceeding through a red light, notwithstanding the fact that the police vehicle collided with another vehicle which the officer did not see. The Nikolov court noted that the officer experienced a short term reduction of visibility at the intersection, but it held that such a factor was insufficient to raise the officer’s conduct to the reckless standard, citing the Herod case for support. (Nikolov, 96 AD3d at 1373.) However, in Herod, the police officer had the right-of-way, there was no evidence of any traffic at the intersection, and further the officer was responding to a fight where there was a threat to the safety of those involved and thus the officer was duty bound to use all reasonable means to arrive at the scene as soon as possible. (Herod, 62 AD3d at 1270.) In contrast, in the case at bar there is significant doubt as to whether the defendant Fiore had the right-of-way given that he does not recall the color of the traffic lights, he himself was concerned that there might have been a car behind the obstructions to his view yet he continued to proceed, and there was no fight or other emergency situation occurring. Thus, both Nikolov and Herod are distinguishable.
Plaintiff cites as relevant authority the Court of Appeals case Campbell v City of Elmira (84 NY2d 505 [1994]) where the Court applied Vehicle and Traffic Law § 1104 to uphold a jury finding that a fire truck driver acted recklessly when he proceeded through a red light at 10 to 15 miles per hour. (Campbell, 84 NY2d at 505.) The Court indicated that “[t]he decision to ignore a grave risk, which is likely to result in harm to others, may satisfy the intentional aspect sufficient to impose *180 liability.” {Id. at 511.) Although Campbell analyzed section 1104 of the Vehicle and Traffic Law, the reckless disregard standard contained therein is applicable in a section 1103 (b) case, as in the case at bar. Campbell held that the vehicle operator can still be held civilly liable for reckless disregard even when proceeding at a speed of 10 to 15 miles per hour, below the speed limit, when going through a red light, even when responding to a fire call.
The plaintiff also cites recently decided case law from the Fourth Department, Ruiz v Cope (119 AD3d 1333 [4th Dept 2014]), in which it was found that a plaintiff raised a triable issue of fact in asserting that defendant police officer driver displayed reckless disregard for the safety of others when responding to a “shots fired call,” wherein he sped through a red light without looking and his view was obstructed, causing an accident. (Ruiz, 119 AD3d at 1334.) Plaintiff also cites a distinguishing case, Williams v Fassinger (119 AD3d 1368 [4th Dept 2014]), in which a defendant police officer driver proceeded to a red light in an emergency situation, stopped, and then “crept” through the intersection, at which time the collision occurred. (Williams, 119 AD3d at 1369.) The Williams court found there was no triable issue of fact as to whether the defendant acted with reckless disregard. {Id.)
Once again, these cases deal with section 1104 of Vehicle and Traffic Law, but nevertheless employ the same reckless disregard standard. These Fourth Department cases clearly made the distinction that continuously proceeding through a red light can raise a triable issue of fact, not appropriate for summary judgment, whereas stopping at a red light and then “creeping” into the intersection pose no such issue. Further, in Ruiz and Williams the police cars had a rationale for their questioned behavior in that they were responding to a call. Here, defendant Fiore has provided no explanation for running the red lights. In fact he doesn’t even recall if he did so.
Defendants contend that defendant Fiore’s actions constituted a momentary lapse in judgment. He was traveling at reduced speed, all of his snowplow lights were working, and therefore the reckless disregard standard should be used. Plaintiff contends that because defendant Fiore continued at a speed of at least 10 to 15 miles per hour, ran two red lights, and had an obstructed view, a triable issue of fact exists regarding whether defendant Fiore recklessly disregarded the safety of others. The deposition testimony of defendant Fiore, defend *181 ant Wyatt T. Holmes, and Samuel Simon strongly indicate that defendant Fiore drove through two red lights without seeing the Holmes’ vehicle and caused an accident. He struck the back end of the vehicle, which was said to have been in the middle of four lanes of Genesee Street. This means the Holmes’ vehicle was already well into the intersection when it was struck, causing even more doubt as to whether defendant Fiore proceeded carefully and slowly through the traffic lights as he testified. Further, Fiore admits that his view was obstructed and that he was aware that there may have been a car behind the obstruction. Thus there is clearly an issue of fact as to whether his actions posed a “grave risk which is likely to result in harm to others.” The court agrees with plaintiff’s view that there is an issue of fact as to whether defendant acted with reckless disregard to the safety of others. Therefore the Utica defendants’ motion for summary judgment is denied.
The cross motion by defendant Wyatt T. Holmes can be dispatched fairly easily. He contends he was not negligent because he did not breach any duty to the plaintiff and he did not cause or contribute to the accident. Further, defendant Wyatt T. Holmes contends that defendant Fiore was not actually engaged in road work, given that he had completed his route and was merely returning to the garage at the time of the accident, and therefore defendant Fiore should be held to a negligence standard. However, as the court has previously found, defendant Fiore was engaged in work at the time of the accident and therefore his actions must be measured under the reckless disregard standard.
Defendant Wyatt T. Holmes met his initial burden on his cross motion by establishing that the light was green prior to his entry into the intersection. However, a driver who lawfully enters an intersection with a green light may still be found partially at fault for an accident if he or she fails to use reasonable care to avoid a collision with a vehicle in the intersection. (Margolis v Volkswagen of Am,., Inc., 77 AD3d 1317, 1320 [4th Dept 2010], quoting Siegel v Sweeney, 266 AD2d 200, 202 [2d Dept 1999].) In addition, defendant Wyatt T. Holmes had a “duty to see that which through the proper use of his senses he should have seen.” (Burkhart v People, Inc., 106 AD3d 1535, 1536 [4th Dept 2013], quoting Lupowitz v Fogarty, 295 AD2d 576, 576 [2d Dept 2002].)
The deposition testimony establishes that defendant Fiore was driving a large plow and that all of its lights were on *182 at the time of the accident. Yet defendant Wyatt T. Holmes testified that he did not see the snowplow at any time before it actually hit their car, nor did he see any rotating or flashing lights after the accident. Thus there are clearly factual issues as to whether defendant Wyatt T. Holmes should have seen through the proper use of his senses the snowplow and whether he used reasonable care to avoid the accident. Therefore the cross motion to dismiss by defendant Wyatt T. Holmes is denied.
Now, therefore, in accordance with the above decision, it is hereby ordered, adjudged, and decreed that the Utica defendants’ motion for summary judgment is hereby denied; and it is further ordered, adjudged, and decreed that the plaintiffs cross motion for summary judgment is hereby denied; and it is further ordered, adjudged, and decreed that defendant Wyatt T. Holmes’ cross motion is hereby denied.